[No. B016586. Second Dist., Div. One. Feb. 17, 1988.]

TAN JAY INTERNATIONAL, LTD., et al., Plaintiffs, Cross-defendants and Appellants, v.
CANADIAN INDEMNITY COMPANY, Defendant, Cross-complainant and Appellant.

698

## COUNSEL

Greines, Martin, Stein & Richland and Alan G. Martin for Plaintiffs, Cross-defendants and Appellants.

Lascher & Lascher and Edward L. Lascher for Defendant, Cross-complainant and Appellant.

## OPINION

**HANSON, Acting P. J.—**

### INTRODUCTION

Plaintiffs Tan Jay International, Ltd. (Tan Jay) and Peter Nygard (the insureds) filed a complaint for damages, breach of contract, emotional distress and declaratory relief against the insurer, defendant Canadian Indemnity Company (Canadian), alleging bad faith refusal to defend and indemnify plaintiffs in a third-party action. Both compensatory and punitive damages were sought.

Defendant Canadian cross-complained against Tan Jay, Nygard, the third-party plaintiff Douglas Michaelson, Viking Holding Company and Does. The first two causes of action sought declaratory relief and the second

two causes of action sought indemnity from defendant Canadian's insured, Peter Nygard.

Plaintiffs demurred to the cross-complaint. Cross-complainant attempted to amend the cross-complaint, and finally dismissed the third and fourth causes of action against Nygard. Plaintiffs moved for an early trial date; their motion was granted. Defendant Canadian filed a motion for summary judgment as to both the complaint and cross-complaint; plaintiffs sought summary adjudication of issues without substantial controversy. The motions were consolidated for hearing; the motions of both plaintiffs and defendant were denied.

Trial was by jury. The jury responded to the request for special findings and rendered a verdict for plaintiffs of $5,298,178.71 in compensatory damages and $35 million in punitive damages.

Defendant Canadian substituted new counsel and moved for new trial or judgment notwithstanding the verdict. The trial court granted judgment notwithstanding the verdict as to plaintiff Peter Nygard, but denied it as to plaintiff Tan Jay. The trial court further granted defendant's motion for new trial, ruling that the award of damages was excessive and not supported by the evidence.

Defendant Canadian has appealed from the denial of defendant's motion for judgment notwithstanding the verdict as to plaintiff Tan Jay and from the trial court's order granting new trial as to issues of damages only. Plaintiff Peter Nygard has appealed from the judgment notwithstanding the verdict entered against him.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff Tan Jay is a Winnipeg, Manitoba-based manufacturer of women's sportswear. Its principal owner and chairman of the board is plaintiff Peter Nygard. Nygard is a sailor of some distinction, and has been a member of the Canadian Olympic Sailing Team. Tan Jay has cultivated an image which emphasized sailing.

In 1977, Tan Jay entered the Los Angeles clothing market. Nygard owned an Olympic-class sailboat; he and Murray Batte, the president of

Tan Jay and a minority shareholder in Tan Jay, decided to use the sailboat as part of a promotional campaign for Tan Jay in California.

Tan Jay temporarily stored the sailboat at the California Yacht Club in Marina del Rey. When Nygard decided not to join the club, the club requested that the boat be taken elsewhere. Nygard instructed his secretary, Cynthia Jewett, to have the boat moved to Tan Jay's warehouse. Instead of calling professional boat movers, Ms. Jewett enlisted the aid of David Swift, another Tan Jay employee to move the boat. Among those helping with the move was Douglas Michaelson. As the boat was being moved down Fiji Way in Marina del Rey on a trailer, with the mast still in place, the mast came in contact with an overhead high voltage line and Michaelson was electrocuted; he survived, but sustained very severe injuries, including the loss of one leg, several fingers, and other permanent injuries. The accident occurred on April 8, 1978, and shortly thereafter Michaelson brought suit against Tan Jay.

Plaintiff Nygard was advised of the accident shortly after it occurred. Tan Jay had a $1 million general comprehensive liability policy issued by defendant Canadian, bearing a special endorsement covering its employees for all accidents occurring in connection with the business. Nygard phoned Tan Jay's insurance broker, John A. Flanders Company, Ltd. and spoke to Martin Eva, the head of Flanders. Eva then spoke to the local branch claims manager of Canadian, telling him of the accident, and a letter was sent to Tan Jay's counsel advising counsel that Canadian had been notified.

Canadian denied coverage and refused to provide a defense for the Michaelson action. Eva conveyed this news to Nygard. Nygard consulted California counsel, who recommended an experienced personal injury trial lawyer, W. Marshall Morgan. Morgan, apprised of Canadian's refusal to defend, undertook that duty on behalf of Tan Jay.

Early in 1983, as the Michaelson action neared trial and substantial discovery had been completed, Morgan's law firm again requested coverage and defense from Canadian. Canadian responded by retaining Canadian and California counsel. Tan Jay provided the insurer with its discovery material and agreed that Canadian could investigate, defend and settle the case without any prejudice to its position.

At this point, it was clear that Tan Jay's exposure on Michaelson was substantial. Morgan kept Canadian advised of all developments and asked

the insurer to participate in settlement discussions. He not only explained the basis for coverage, he advised Canadian that the case could be settled within policy limits. At one point Michaelson was prepared to settle for $1.2 million; Canadian was asked to pay $700,000; the boat and trailer insurer had agreed to pay its policy limits of $300,000, and Nygard had agreed to pay $200,000 of his own funds. Canadian refused, and the settlement did not go forward because Nygard could not obtain $900,000.

Douglas Michaelson obtained $4.4 million, after a jury trial. This was reduced on motion for new trial to about $2.1 million. Tan Jay appealed and Michaelson cross-appealed. The California Yacht Club, named as a codefendant of Tan Jay in the Michaelson action, received a new trial; it settled and sought indemnity from Tan Jay.

Michaelson commenced collection efforts against Tan Jay in Canada. Execution on the judgment would have put Tan Jay out of business entirely. As it was, the efforts to collect damaged its business standing and public reputation.

In February 1984, Tan Jay and Nygard filed the action before us for bad faith, emotional distress and declaratory relief against defendant Canadian. Canadian cross-complained for declaratory relief. Granted an early trial date after showing that the Michaelson efforts to collect on the personal injury judgment had placed Tan Jay in jeopardy, plaintiffs proceeded against Canadian at trial in May 1985. Plaintiffs presented four expert witnesses, who agreed that Canadian had a clear duty pursuant to the terms of plaintiffs' policy to defend the Michaelson action, and its refusal to investigate, defend and indemnify was totally without justification. Evidence presented on damages included, in addition to the Michaelson judgment, then on appeal, the expenditure of approximately $150,000 in attorney fees, the fact of plaintiff Nygard's personal emotional distress and the damage to Tan Jay's business reputation.

At trial, Canadian's trial counsel described his client as a vastly wealthy insurance company. The jury awarded $35 million in punitive damages, in addition to the compensatory damages award.

After the jury verdict, the cross-complaint for declaratory relief was tried. The trial court found coverage and issued a statement of decision as requested by Canadian's new counsel (present counsel on appeal). The trial court conditionally granted Canadian's motion for new trial with respect to

damages, reducing compensatory damages to $4,273,257 and punitive damages to $500,000. Tan Jay refused the remittitur. As indicated, the trial court denied Canadian's motion for judgment notwithstanding the verdict as to Tan Jay but granted it as to Peter Nygard. Canadian has appealed, as has Nygard. The record before us reveals that Canadian finally paid the Michaelson judgment and the Michaelson appeal has been dismissed.

### DEFENDANT CANADIAN'S APPEAL

On appeal, defendant Canadian contends (1) that the trial court erred in denying Canadian's motion for a judgment notwithstanding the verdict as to plaintiff Tan Jay and (2) that the trial court erred by its limitation of new trial granted Canadian to issues of damages only.

### I

The standard of review applicable to a grant of judgment notwithstanding the verdict is well established. ■ In *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282], the California Supreme Court stated: "The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict. [Citations.] The trial judge cannot weigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. [Citations.] 'A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' [Citation.]"

On this appeal, defendant Canadian does not spend much time attempting to persuade this court that there was no substantial evidence of Canadian's breach of the covenant of good faith and fair dealing. Nor does Canadian attack the trial court's disposition of defendant's cross-complaint for declaratory relief concerning coverage. Defendant Canadian's main arguments as to why its comprehensive business policy did not cover the Michaelson accident were twofold: (1) that the use of the sailboat was not business related and (2) that the sailboat came within a vehicular exclusion in the

policy. The trial court rejected these excuses for noncoverage and we need *not consider the issue further.*

The main thrust of Canadian's lengthy brief is directed at the issue of damages. It is elementary that a plaintiff must show injury and entitlement to damages to recover them from a defendant; to that extent, defendant Canadian's challenge to the sufficiency of plaintiffs' evidence on the damages which flowed from Canadian's breach is understandable.

It was said in *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 925 (italics omitted) [148 Cal.Rptr. 389, 582 P.2d 980], that "[A]n insurer's breach of its duty of good faith and fair dealing renders it liable for any damages which are the proximate cause of that breach. In the so-called 'third party' situation, of which *Communale* [v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 (328 P.2d 198, 68 A.L.R.2d 883)] and *Crisci* [v. *Security Ins. Co.* (1967) 66 Cal.2d 425 (58 Cal.Rptr. 13, 426 P.2d 173)] are representative, the breach of duty may have as its proximate result the entry of a judgment in excess of policy limits against the insured. . . . Only damages proximately resulting from the breach—such as consequent economic loss or emotional distress, for example—are recoverable as compensation therefor."

There was not only sufficient but overwhelming evidence in this record that plaintiff Tan Jay suffered damage as the result of defendant Canadian's breach. There was testimony (1) as to the incurrence of attorney fees and costs of defending in the absence of defense by Canadian; (2) about Canadian's refusal to contribute to a Michaelson settlement when one was possible for a reasonable amount; (3) about the damage to Tan Jay's business reputation; and (4) there was testimony about the Michaelson judgment entered against Tan Jay, and subsequent efforts to execute on that judgment. We enumerate these facts for the sole purpose of negating defendant Canadian's suggestion that the *liability* of defendant Canadian to plaintiff Tan Jay was questionable because of the failure of proof of damage.

We hold that there was ample proof to support the finding of liability. We further hold that the trial court properly granted new trial to defendant Canadian on the damages issue, which renders any discussion of the specific perceived inadequacies of plaintiffs' proof on damages at the first trial immaterial. Our record reflects that defendant Canadian has finally settled with Michaelson, so the issue of whether the Michaelson judgment was one which the jury could have properly considered in the 1985 trial is also immaterial. We note, however, that in California an insured does not have to wait until a final judgment has been entered against him by a third party to claim that he has been damaged by the failure of his insurer to

honor the duty to defend and indemnify. (See *Larraburu Bros., Inc.* v. *Royal Indemn. Co.* (9th Cir. 1979) 604 F.2d 1208, for a lengthy discussion on this point.)

## II

We next turn to defendant Canadian's contentions that the trial court should have granted new trial to defendant in its entirety, instead of limiting the retrial to the issue of damages.

In *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 285 [137 Cal.Rptr. 635, 562 P.2d 316], the California Supreme Court stated that "[t]he power of a trial court to grant a new trial as to some issues, while refusing it as to others, is also well established. [Citations.] '. . . An abuse of discretion must be shown before a reviewing court will reverse the trial judge's decision [citations].'" (See also *Marshall* v. *Brown* (1983) 141 Cal.App.3d 408, 414 [190 Cal.Rptr. 392].)

Three factors of importance in assessing the choice of limited new trial as opposed to entire new trial are: (1) whether liability was clearly established at the first trial, (2) whether the evidence concerning damages was insufficient or entirely nonexistent; and (3) whether prejudice to a party would result as the result of the choice of one disposition over the other. (See *Liodas* v. *Sahadi, supra,* 19 Cal.3d 278, 285; *Leipert* v. *Honold* (1952) 39 Cal.2d 462, 466-467 [247 P.2d 324, 29 A.L.R.2d 1185]; *Pelletier* v. *Eisenberg* (1986) 177 Cal.App.3d 558, 566 [223 Cal.Rptr. 84].)

We conclude that the record clearly established liability on the part of defendant Canadian to plaintiff Tan Jay. The trial court's decision to permit new trial on the issue of damages was sound, in view of the excessiveness of the jury's punitive damages award ($35 million), from which it can be presumed that the jury was impermissibly swayed by passion and prejudice. There is no prejudice to either side by new trial on the damages issue. Plaintiff Tan Jay rejected the reduction in damages proposed by the trial court and stood ready for new trial. Unfortunately this appeal has slowed the progress toward resolution of this matter, although no argument has been made here by either plaintiff that Canadian undertook the appeal "for delay." (Code. Civ. Proc., § 907.)[1]

---

[1] We need not consider Canadian's argument that (1) punitive damages are unconstitutional as awarded in California or (2) that the United States Supreme Court may soon say so. We are bound by current decisional law. It has long been established that punitive damages are

■ We find no abuse of discretion in the trial court's grant of limited new trial on the issue of damages to defendant Canadian.

### PLAINTIFF NYGARD'S CROSS-APPEAL

Plaintiff Nygard has appealed from the trial court's grant of judgment notwithstanding the verdict to defendant Canadian. Defendant Canadian argued below, as it does here, that plaintiff Nygard had no standing to sue for Canadian's breach of the covenant of good faith and fair dealing because plaintiff Nygard had not been named as a defendant in the Michaelson action and could not recover for the damages sustained by another entity, Tan Jay. In addition, it was contended below that there was, in any event, insufficient evidence of plaintiff Nygard's asserted emotional distress resulting from Canadian's conduct.

The trial court's grant of judgment notwithstanding the verdict did not specify the ground upon which it was based. Defendant Canadian defends the trial court's ruling with respect to plaintiff Nygard in this court by contending: (1) that a shareholder such as Nygard may not, as a matter of law, personally recover emotional distress damages for injury to the corporation in which he holds the shares; (2) that the evidentiary record did not support any award of emotional distress damages to plaintiff Nygard; and (3) that in the absence of an award of actual damages, a plaintiff cannot recover punitive damages. We address these issues seriatim.

### I

Our discussion begins with the reiteration that the standard of review of a grant of judgment notwithstanding the verdict, as described in *Hauter* v. *Zogarts, supra,* 14 Cal.3d 104, 110, applies here as well.

■ Defendant Canadian is correct in stating that a shareholder may not, as a matter of law, personally recover emotional distress damages for injury *to the corporation* in which he holds shares. One individual does not, under our law, become entitled to a damage award for injuries sustained by another, and a corporation is a distinct legal entity apart from its shareholders. (*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106-107 [81 Cal.Rptr. 592, 460 P.2d 464].)

---

not unconstitutional in California (*Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388 [185 Cal.Rptr. 654, 650 P.2d 1171].) If the United States Supreme Court says that such damages are unconstitutional, that issue may be the subject of further analysis at some future time.

However, these principles have no relevance in the case at bench, because plaintiff Nygard sued for injuries to *himself*. Canadian's comprehensive business policy issued to and paid for by Tan Jay also included plaintiff Nygard as named insured. As was explained in *Truestone, Inc.* v. *Travelers Ins. Co.* (1976) 55 Cal.App.3d 165, 169-170 [127 Cal.Rptr. 386], "[t]he covenant of good faith and fair dealing implied in every liability insurance policy obligates the insurer to treat offers to settle claims against its *insured* within limits of the insurance coverage without regard to its own special interest existing because of policy limits. The covenant thus imposes a duty upon the insurer to accept reasonable settlement offers within the scope of its policy. [Citations.] Breach of the duty creates causes of action in both contract and tort. [Citation.] . . . [¶] While the law recognizes a cause of action in tort, the duty breached by the tortious conduct of an insurer refusing to settle in good faith flows from the contractual relationship. [Citation.] The *insured* does not, by the contract of insurance, seek 'to obtain a commercial advantage but to protect [himself] against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide. . . .' [Citation.] For that reason, damages for mental suffering are included within those recoverable for the insurer's breach of duty to settle in good faith. [Citation.]" (Italics added.)

After reviewing the basics of bad faith law, the *Truestone* court observed that its plaintiffs, the Campbells, were shareholders and owners of a closely held corporation and insured pursuant to the policy with Travelers. Thus the duty created by the implied covenant of good faith and fair dealing was owed to them personally, a duty not to tortiously destroy the peace of mind for which they bargained. *Truestone* held that where "shareholders of a closely held corporation are joint insureds with it, the insurers' implied covenant of good faith and fair dealing runs to the shareholders as well as to the corporation and the shareholders may pursue a cause of action for its breach." (*Id.* at p. 171.)

Defendant Canadian points out that *Truestone* was a pleading case. Such a case is a singularly appropriate vehicle for deciding a purely legal question. The question was incorrectly decided in the case before us by the trial court in granting judgment notwithstanding the verdict. Other California cases are in accord with the principles stated in *Truestone;* see *Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511 [209 Cal.Rptr. 551, 55 A.L.R.4th 1017]; *Cancino* v. *Farmers Ins. Group* (1978)

80 Cal.App.3d 335 [145 Cal.Rptr. 503]; see, further, *Larraburu Bros., Inc. v. Royal Indemn. Co., supra,* 604 F.2d 1208.

II

 Defendant Canadian argues that the evidentiary record made in this case did not support the award of any emotional distress damages to plaintiff Nygard. It is specious to suggest that plaintiff did not prove emotional distress.

 What the law does not compensate are emotional injuries which are trivial or transitory, as contrasted to substantial or enduring. *(Commercial Cotton Co. v. United California Bank, supra,* 163 Cal.App.3d 511, 517.) The record on appeal details conduct on the part of Canadian from 1978 to the present that is classic in its demonstration of bad faith as defined by decisional law. The fact is that Nygard's insurer (Canadian) abandoned him without justification in the face of a multimillion dollar third party claim, leaving him to face losing his reputation, his business, and his peace of mind gradually over a long period of time.

 Determinations concerning emotional distress—its existence and the appropriate compensation for it—are left to the finder of fact, often a jury, based on an entire evidentiary record, including the reasonable inferences which can be drawn from it, although a jury may properly rely on the testimony of one person to reach its conclusion. In the instant case, both plaintiff and his attorney testified that Nygard suffered emotional distress, and the entire record supports that claim. Upholding such an award does not require proof of bankruptcy, physical illness or injury, nor courtroom demonstrations of the destruction of personal peace of mind or well-being.

We conclude that there was evidence in the record to support an award of emotional distress damages—evidence that the trial court could not reweigh in performing its function of ruling on the motion for judgment notwithstanding the verdict.

## III

Defendant Canadian finally contends that punitive damages cannot be assessed in favor of a plaintiff who has not received an award of actual damages. We address the issue for purposes of retrial on the issue of damages owed to both plaintiffs. ▮▮▮ Punitive damages are *only* precluded when a plaintiff has *sustained* no actual damage. (See *Commercial Cotton Co. v. United California Bank, supra,* 163 Cal.App.3d 511, 517, fn. 2.)

## DISPOSITION

The judgments appealed from are affirmed in part, and reversed in part, with directions.

The trial court properly denied defendant Canadian's motion for a judgment notwithstanding the verdict as to plaintiff Tan Jay; we affirm the denial. It erred in granting defendant Canadian's motion for a judgment notwithstanding the verdict as to plaintiff Peter Nygard; we reverse the grant of the motion.

The trial court properly granted a new trial on the issue of damages only, as to plaintiff Tan Jay. New trial should also have been granted on the issue of damages *only,* as to plaintiff Nygard.

The cause is remanded for new trial limited to the issue of damages owed by defendant Canadian to both plaintiffs. Plaintiff Nygard is to recover costs in this court.

Lucas, J., and Devich, J., concurred.

A petition for a rehearing was denied March 7, 1988, and the petition of defendant and appellant for review by the Supreme Court was denied May 4, 1988.