Harold BERG; Willard S. Boothby, Jr.; Harold C. Stuart; A. Alfred Taubman; John W. Teets; Laurence A. Tisch; Henry Wendt, Plaintiffs–Appellants,

v.

FIRST STATE INSURANCE COMPANY; The Harbor Insurance Company, Defendants–Appellees.

Harold BERG; Willard S. Boothby, Jr.; Harold C. Stuart; A. Alfred Taubman; John W. Teets; Laurence A. Tisch; Henry Wendt, Plaintiffs–Appellees,

v.

FIRST STATE INSURANCE COMPANY, Defendant–Appellant.

Harold BERG; Willard S. Boothby, Jr.; Harold C. Stuart; A. Alfred Taubman; John W. Teets; Laurence A. Tisch; Henry Wendt, Plaintiffs–Appellees,

v.

FIRST STATE INSURANCE COMPANY, Defendant,

and

The Harbor Insurance Company, Defendant–Appellant.

Nos. 88–6682, 89–55004 and 89–55054.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1990.

Decided Sept. 25, 1990.

461

Steven B. Feirson, Dechert Price &
Rhoads, Philadelphia, Pa., for plaintiffs-appellants, cross-appellees.

Mark L. Rosen, Ignatius John Melito,
Amy Gallent, Kathleen L. Kuhn, Siff, Rosen & Parker, P.C., New York City,
Charles A. Adamek, Nora Dwyer, Diane I.
Jennings, Lord, Bissell & Brook, Los Angeles, Cal., Howard M. Garfield, Long & Levit, Robin A.R. Fisher, Sedgwick, Detert,
Moran & Arnold, San Francisco, Cal., for
defendants-appellees, cross-appellants.

Before GOODWIN, Chief Judge,
CANBY and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

## OVERVIEW

Six former directors of the Getty Oil Company (Getty Oil) appeal from the district court's grant of summary judgment in favor of the appellees, First State Insurance Company (First State) and Harbor Insurance Company (Harbor) (collectively, the insurers). The directors claim their liability insurance policies were wrongfully cancelled when the insurers learned of the directors' potential liability for in excess of $10 billion on shareholder derivative suits as a result of the Texaco/Pennzoil battle for control of Getty Oil.

The directors sued the insurers for the wrongful cancellation, alleging claims under RICO and California law. The insurers moved for summary judgment. They argued that the directors could not prevail as a matter of law because there were no actual damages. The district court agreed with the insurers and granted summary judgment on all claims with the exception of two state law claims. Those state claims were later dismissed for lack of subject matter jurisdiction.

Both the directors and the insurers appeal the rulings of the district court. The decision of the district court is affirmed.

## FACTS AND PROCEEDINGS

The directors were the named insureds of directors' and officers' liability policies (the policies) first purchased by Getty Oil and issued in 1983 by First State and Harbor. The policies provided $60 million in coverage.[1]

On December 10, 1985, a Texas state court entered a $11.12 billion judgment against Texaco and in favor of Pennzoil for Texaco's tortious interference with a contract. The lawsuit arose from Texaco and Pennzoil's highly publicized battle in late 1983–early 1984 for control of Getty Oil, in which Texaco offered to buy Getty stock at a substantially higher price than Pennzoil previously had offered. Pennzoil claimed it had reached an agreement with Getty to purchase the stock.

During the takeover battle, the directors' and officers' liability policies Getty had purchased were in effect. Texaco itself had first cancelled the policies after it acquired Getty Oil. Texaco converted the policies to three-year run-off coverage until May 1, 1987, for acts committed before May 1, 1984. In February and March of 1985, the insurers cancelled the run-off policies without notice to the directors. At that time the insurers were aware of the potential lawsuits and liability.

In early 1986, after entry of the judgment against Texaco, Texaco shareholders filed derivative suits against each of the Getty Oil directors, seeking damages in excess of $10 billion. For the first time, the Getty Oil directors learned the insurers had cancelled their liability policies.

The directors brought this action against the insurers pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. They also alleged state law causes of action sounding in tort and contract, and under the California Insurance Code. They requested treble damages, punitive damages of not less than $100 million, attorneys' fees and costs, and indemnification for all judgments, fees, and costs incurred in defending any shareholders' derivative suits.

In April 1987, Texaco filed for bankruptcy. In December of 1987 or March of 1988, the bankruptcy reorganization of Texaco resulted in the dismissal of all the shareholder derivative suits against the Getty Oil directors. Texaco purchased the directors another run-off policy covering them to $40 million until January of 1990.

In July 1988, the insurers moved for summary judgment. They argued that the directors were not entitled to damages as a matter of law because they could no longer

---

1. First State issued the primary policy that provided $35 million annually in coverage. Harbor issued an excess policy that provided $25 million annually in coverage. A second excess layer provided by a third insurance company who is not a party provided an additional $40 million in coverage, after exhaustion of the first $60 million provided by First State and Harbor. The total amount of coverage was $100 million annually.

prove any damage. They asserted that Texaco ultimately paid all of the directors' expenses incurred in the defense of the derivative suits and that as a result of a joint plan of reorganization between Texaco and Pennzoil in bankruptcy court, these companies agreed to mutually release each other and the Getty Oil directors from all claims arising out of the Texaco–Getty merger. This resulted in the dismissal of the Texaco shareholder suits. It is undisputed that the directors have incurred no costs or attorneys' fees in either the derivative suits or in this action.

The district court granted summary judgment to the insurers as to all counts of the complaint except those alleging breach of contract and equitable estoppel under California law, which were dismissed later for lack of federal subject matter jurisdiction.

The directors appeal. They contend they lost a valuable property interest when their insurance was cancelled, regardless of whether they incurred any loss of money. The directors claim they are entitled to treble damages under RICO because they have alleged actual injury to property as required by 18 U.S.C. § 1964(c). They also claim they may receive compensatory damages equal to the market value of the policies at the time they learned of the cancellation. They claim they may seek compensatory damage for emotional distress, regardless of whether they sustained any other actual loss, because they lost the peace of mind and security that the insurance was purchased to provide. They also claim the collateral source rule allows them to be compensated for the cost of partial replacement insurance even though Texaco paid for it. Finally, the directors claim they are entitled to punitive damages

whether or not they are entitled to compensatory damages because the insurers wrongfully cancelled their policies when they knew there was a potentially tremendous payout.

The insurers cross-appeal the dismissal of the state law claims for breach of contract and equitable estoppel. Harbor argues the district court abused its discretion in failing to retain jurisdiction over these counts because it had expended significant time and effort in the two years it had jurisdiction over this action. Harbor claims that duplicative efforts at great expense will result if litigation is reinstituted in the California Superior Court.

## DISCUSSION

### The Factual Disagreements on Appeal

While the parties dispute the facts, they both agree that the motion before the district court was premised only on the legal insufficiency of the directors' claims, not the presence of disputed facts.

Therefore, we will decide only whether the defendants were entitled to judgment as a matter of law on the claims raised in the complaint.

### The RICO Claim [2]

RICO provides in pertinent part that

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c).[3] The district court ruled the directors did not incur any ex-

---

**2.** The complaint alleges that the cancellation of policies was part of a wide-ranging scheme on the insurers' part to cancel directors' and officers' insurance whenever substantial potential claims appeared likely.

**3.** Section 1962 prohibits those who have received income from racketeering activity or collection of unlawful debt from using or investing that income in any enterprise which engages in or affects interstate or foreign commerce. It also prohibits anyone from having any interest

or control over such an enterprise through a pattern of racketeering activity or collection of unlawful debts. Finally, section 1962 prohibits persons employed by or associated with an enterprise associated with interstate or foreign commerce from conducting or participating in the enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt, and from conspiring to do anything that section 1962 prohibits.

penses and therefore could prove no actual damage under RICO.

■ Recently, this court held that "[a]bsent damages, a RICO claim cannot be sustained." *First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir.1988) (footnote omitted). We stated that "[a]ppellants would bear the burden at trial of proving injury. Absent a showing sufficient to establish the existence of *actual injury*, summary judgment is required." *Id.* at 547 n. 11 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)) (emphasis added). We explained that by "actual injury," we meant financial loss or injury. *Id.* at n. 12.

■ It is beyond dispute that the directors have suffered no financial loss. However, they claim injury to a valuable intangible property interest in their liability policies[4] when the policies were cancelled; *viz*, "both the protection [the policies] afforded against potential financial loss in the future and the present peace of mind that flows from such protection." This statement describes a personal injury in the form of emotional distress, not a claim for an injury to property as section 1964(c) requires.

Several courts have held that personal injury is excluded from the requirement of injury to "business or property" under section 1964(c). The Eleventh Circuit has stated:

> In our view, the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom. As a panel of the Second Circuit remarked, '[t]he requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a

proprietary type of damage. For example, a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his building is the type of injury for which § 1964(c) permits suit.'

*Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir.1988) (quoting dictum in *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984), *vacated on other grounds*, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985)); *Rylewicz v. Beaton Servs., Ltd.*, 698 F.Supp. 1391, 1396 (N.D.Ill.1988) (emotional distress is a noncompensable personal injury under RICO), *aff'd*, 888 F.2d 1175 (7th Cir.1989).[5] A concurring opinion in this court has also observed that, under RICO, "[i]njury to business or property does not include personal damages." *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir.1987) (Patel, J., concurring).

We follow the Eleventh Circuit and hold that, as a matter of law, personal injury, including emotional distress, is not compensable under section 1964(c) of RICO. Even if the directors had incurred pecuniary losses from emotional distress, they would not be compensable under RICO.

*The State Law Claims*

The directors seek recovery under various common law tort theories. They alleged breach of contract, estoppel, breach of the duty of good faith and fair dealing, breach of fiduciary duties, fraud, negligent misrepresentation, a violation of California Insurance Code § 790.03, and wrongful refusal to settle. The district court granted summary judgment for the defendants on all these claims except those for breach of contract and estoppel.

---

4. Many courts have recognized that insurance policies are property. *See, e.g., In re Mendenhall's Estate*, 182 Cal.App.2d 441, 6 Cal.Rptr. 45, 47 (1960) (an insurance policy is property with a pecuniary value the same as if the owner held a promissory note of the insurance company payable on condition). This court has specifically recognized that directors' and officers' liability policies are property. *In re Minoco Group of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir.1986) (bankruptcy case recognizing the value of such

policies "as protection against claims that may be asserted against the insured").

5. There is dictum in *Bro* regarding a physical injury: "[t]here is no indication that appellees' proxy solicitation resulted in … any physical harm to a director." 847 F.2d at 544. This statement does not detract from the Eleventh Circuit's detailed analysis in *Grogan* as to why personal injury is not cognizable under RICO.

■ Under California law, "uncertainty as to the *fact* of damage, rather than its amount ... negatives the existence of a cause of action." *Walker v. Pacific Indem. Co.*, 183 Cal.App.2d 513, 517, 6 Cal. Rptr. 924, 926 (1960) (emphasis added). "Uncertainty as to the fact of damage, that is, as to the ... existence ... of the damage, is fatal." *Allen v. Gardner*, 126 Cal. App.2d 335, 340, 272 P.2d 99, 102 (1954).

■ Here, pecuniary damage is non-existent. The undisputed facts are: (1) Getty Oil purchased the initial liability policies for the directors; (2) Texaco cancelled those policies and purchased a run-off policy to cover the directors; (3) as a result of Texaco's reorganization in bankruptcy, all of the derivative suits were dismissed against the directors; (4) in 1988, Texaco purchased replacement insurance for the directors with $40 million in coverage to expire in January 1990; (5) Texaco paid all costs and expenses incurred by the directors in the derivative suits and in this lawsuit; (6) the insurers have returned all unearned premiums; and (7) the policies contained clauses allowing cancellation by either party. Therefore, it is difficult to conceive how the directors have been damaged.

Nonetheless, the directors contend they are entitled to compensatory damages for the loss of their property interest in the cancelled policies. They claim compensatory damages equal to the market value of the policies at the time they learned of the cancellations as an appropriate measure of damages, and/or damages for emotional distress as well as punitive damages.

■ Compensatory damages are those damages as will compensate the injured party for the injury sustained; to make good or replace the loss caused by the injury. *See Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1217 (9th Cir.1983), *cert. denied*, 471 U.S. 1007, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985). While it is true that the directors lost insurance protection, that loss did not result in any other ultimate injury or damage to their property interest in the policies. The "mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable." *Walker*, 183 Cal.App.2d at 517, 6 Cal.Rptr. at 926. Here, there is no longer even a possibility of pecuniary damage because the derivative suits have been dismissed, the directors have obtained replacement coverage, and no expenses have been incurred. The directors are not entitled to compensatory damages under these circumstances.

Throughout their appellate briefs, the directors place great importance on the case of *Caminetti v. Manierre*, 23 Cal.2d 94, 142 P.2d 741 (1943), especially in the arguments regarding the damages they should receive for wrongful cancellation of their property right in the liability policies. *Caminetti*, however, involved a non-cancellable disability policy that was cancelled when the insurer became insolvent. *Id.* at 102, 142 P.2d at 145. The replacement insurer argued that the insureds could claim only the unearned premiums because "whether or not damages will be suffered depends upon contingencies which may never occur such as ... [the insured] may die before the term of his policy expires." *Id.* The court disagreed, finding that "[t]he effect of that argument would be to render wholly valueless the noncancellable feature of the policy, a definite and concrete promise of the insurer." *Id.* The court recognized that a chief feature of disability insurance is the protection it gives against the financial effects of the possible occurrence of the contingencies. However, the court required that "proof must establish with reasonable certainty and probability that *damages will result* in the future to the person wronged." *Id.* (emphasis added).

*Caminetti* is thus distinguishable from this case. The policy here could be cancelled by either party; therefore, no such promise as was present in *Caminetti* needs to be safeguarded. Further, the directors can prove no future damages.

The directors' arguments as to why they should be compensated for emotional distress also must fail. They have produced no evidence of emotional distress except for the deposition of one director, Mr.

Stuart. The directors state they alleged emotional distress in the complaint, and claim they were not required "to submit affidavits on the subject at all." Reply Brief at 24.

This assertion is erroneous. Federal Rule of Civil Procedure 56(e) specifically requires

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*See also Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552 (summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

As a matter of law, given the absence of proof that emotional distress was actually suffered by seven of the eight directors, summary judgment must be granted to the insurers as to those directors. Furthermore, summary judgment is appropriate under California law because "uncertainty as to the *fact* of [emotional distress] ... negatives the existence of a cause of action." *Walker*, 183 Cal.App.2d at 517, 6 Cal.Rptr. at 926 (emphasis added).

■ The next question is whether the eighth director, Mr. Stuart, has provided sufficient evidence of emotional distress to avoid summary judgment. In California, emotional distress which is unaccompanied by physical injury "must be severe; i.e., substantial or enduring as distinguished from trivial or transitory." *Commercial Cotton Co. v. United Cal. Bank*, 163 Cal. App.3d 511, 517, 209 Cal.Rptr. 551, 555 (1985). To be transitory, the emotional distress must exist "only briefly; [be] short-lived, [or] passing." *Id.* (quoting The

American Heritage Dictionary, 1364 (New College Ed.1979)).

In his affidavit, Mr. Stuart stated:

> Since the [insurers] took the position in early 1986 that they would not provide any insurance protection, I have suffered substantial anxiety and emotional distress. Among other things, I have worried and continue to worry a good deal about my family's future if I should pass away and they are left to fend off the derivative or other future claims without the benefit of the insurance the [insurers] promised to provide.
>
> The loss of my peace of mind caused by the [insurers'] refusal to provide protection continues to this day. While it is true that the derivative actions have been dismissed on the basis of the exchange of releases, it is also true that the propriety of that exchange of releases, is currently under legal attack. Therefore there continues to be real risk with respect to the derivative claims with which to be concerned.

Mr. Stuart goes on to say that he was concerned about the lower level of coverage provided by the replacement policy, and that "I also have anxiety about other claims which may yet arise from the same facts and circumstances which gave rise to the derivative claims."

This evidence is not sufficient to demonstrate a severe and enduring emotional injury. There is no argument on appeal that the propriety of the releases is still under legal attack; therefore, we must presume the releases have been successfully executed. Mr. Stuart's worries, while certainly deserving of sympathy, have passed. *Cf. Tan Jay Intern. v. Canadian Indem. Co.*, 198 Cal.App.3d 695, 708, 243 Cal.Rptr. 907, 913 (1988) (insurer's bad faith action in abandoning plaintiff in the face of a multimillion dollar claim for a ten-year period up to and including the time of the appeal supports an award for emotional distress). Moreover, Mr. Stuart's anxiety about other claims that may arise in the future is hypothetical and will not survive a motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574,

586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (there must be a demonstration of more than "some metaphysical doubt" as to the material facts to survive a motion for summary judgment).

■ Consequently, we affirm the grant of summary judgment on the state law claims for breach of the duty of good faith and fair dealing, breach of fiduciary duties, fraud, negligent misrepresentation, for a violation of section 790.03 of the California Insurance Code, and for wrongful refusal to settle because there is no evidence of actual injury in the form of financial loss, loss of a property right, or emotional distress to sustain those claims. Further, without actual injury, punitive damages are not recoverable under California law. *Carr v. Progressive Casualty Ins. Co.*, 152 Cal.App.3d 881, 892, 199 Cal.Rptr. 835, 842 (1984).

*Whether the Directors May Recover the Cost of Partial Replacement Insurance Under the Collateral Source Rule*

■ The directors argue the district court's most "glaring error" was its conclusion that the directors incurred no "actual damage" because they had no expenses. The directors assert that they incurred expenses because "it is undisputed that, as a result of the cancellation of the Policies, a replacement policy was purchased to provide the Directors with at least partial replacement coverage." The directors acknowledge that Texaco obtained these partial replacement policies for them at a cost of $8 million. However, they claim the collateral source rule entitles them to recover the $8 million Texaco expended.

■ A federal court applies state law when it deals with the collateral source rule. *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 535 (9th Cir.1962). In California, the collateral source rule states:

[I]f an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.

*Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 6, 84 Cal.Rptr. 173, 175, 465 P.2d 61 (1970) (citation and footnote omitted). California has clarified the purpose and policy judgment behind the rule:

The collateral source rule ... embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. The tortfeasor should not garner the benefits of his victim's providence.

The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Courts consider insurance a form of investment, the benefits of which become payable without respect to any other possible source of funds. If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.

*Id.* at 10, 54 Cal.Rptr. at 178–79, 465 P.2d at 66–67 (footnote omitted).

■ This passage makes it quite clear that California is most concerned with "adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source—such as insurance, ... *for which he had actually or constructively ... paid.*" *Id.* at 13–14, 54 Cal.Rptr. at 181, 465 P.2d at 69 (emphasis added).

The *Helfend* decision explains what is meant by "actual or constructive payments." Such payments do *not* include the receipt of gratuitous services for which the injured party neither paid premiums nor manifested any intent to repay those who had assisted him. *Id.* at 6 n. 5, 84 Cal.Rptr.

at 175–76 n. 5, 465 P.2d at 63–64 n. 5.[6] Texaco's purchase of the replacement policies is gratuitous because the directors incurred no financial obligation for them. Consequently, because the directors did not actually or constructively pay for their replacement policies, as a matter of law the collateral source rule is inapplicable. Further, the directors do not indicate they ever intend to reimburse Texaco. Finally, the directors cannot show they were damaged in any way by the fact that the replacement insurance provided only $40 million in coverage instead of $100 million, since all claims against them were dismissed.

We find the district court properly dismissed this claim.

*Whether the District Court Properly Dismissed the Remaining State Claims*

■ The district court dismissed the claims for breach of contract and estoppel under state law for lack of subject matter jurisdiction after it granted summary judgment for the insurers on all other claims.

This ruling was correct. Where state issues predominate and all federal claims are dismissed before trial, "the proper exercise of discretion requires dismissal of the state claim[s]." *Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536 (9th Cir. 1981).

AFFIRMED.

CANBY, Circuit Judge, concurring in part and dissenting in part:

I concur in nearly all of Judge Leavy's well-written opinion. The only point upon which I disagree concerns the emotional distress claim of director Harold C. Stuart. As Judge Leavy's opinion points out, Mr. Stuart recites in his affidavit that for a period of approximately two years he worried about the threat of financial ruin to himself and his family because of the insurers' allegedly wrongful conduct. I do not view that evidence as reflecting merely "trivial or transitory" distress within the meaning of *Commercial Cotton Co. v.*

*United Cal. Bank*, 163 Cal.App.3d 511, 517, 209 Cal.Rptr. 551, 555 (1985). In *Commercial Cotton*, the only evidence of distress was the plaintiff's attorney's comment that plaintiff appeared to be upset and angry during a telephone conversation; the plaintiff himself never testified to being distressed. Certainly the distress described by Mr. Stuart is far more substantial.

I would draw my lead from *Tan Jay Intern. v. Canadian Indem. Co.*, 198 Cal. App.3d 695, 243 Cal.Rptr. 907 (1988). In that case the alleged distress continued for ten years, admittedly far longer than Mr. Stuart's. The court stated, however:

Determinations concerning emotional distress—its existence and the appropriate compensation for it—are left to the finder of fact, often a jury, based on an entire evidentiary record, including the reasonable inferences which can be drawn from it, although a jury may properly rely on the testimony of one person to reach its conclusion.

*Id.* at 708, 243 Cal.Rptr. at 913. In my view, Mr. Stuart presented sufficient evidence of emotional distress to survive a motion for summary judgment. On that single claim, I would reverse the summary judgment and remand for further proceedings. In all other respects I agree with the majority's opinion and disposition of the appeal.

---

**6.** An example of a constructive payment includes receiving lower wages than would be received without the conferred benefit. *Helfend,* 2 Cal.3d at 6 n. 5, 84 Cal.Rptr. at 175–76 n.

5, 465 P.2d at 63–64 n. 5. There is no evidence to indicate the directors received lower pay to compensate Getty Oil for the purchase of the liability policies.