354 F.3d 1169
 David DIAZ, Plaintiff-Appellant,
v.
Daryl GATES; Willie L. Williams; Richard Alarcon; Richard Alatorre; Hal Bernson; Marvin Braude; Laura Chick; John Ferraro; Michael Feuer; Ruth Galanter; Nate Holden, et al., Defendants, and
Bernard C. Parks, Chief of Los Angeles Police Department, Defendant-Appellee.
 No. 02-56818.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 8, 2003.
 Filed January 20, 2004.
 
 Stephen Yagman, Venice, CA, for the appellant.
 Janet G. Bogigian, DCA, Los Angeles, CA, for the appellee.
 Appeal from the United States District Court for the Central District of California; Gary A. Feess, District Judge, Presiding. D.C. No. CV-01-06400-GAF.
 Before BRUNETTI, T.G. NELSON, and SILVERMAN, Circuit Judges.
 BRUNETTI, Circuit Judge.
 
 
 1
 David Diaz appeals the district court's dismissal of his complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Diaz brought suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, alleging wrongful conviction and incarceration. The district court determined that Diaz failed sufficiently to plead injury to "business or property" as required to proceed under RICO. We agree and affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 The facts generally arise from alleged misconduct of various Los Angeles Police Department (LAPD) officers and other officials as part of the LAPD Rampart scandal. According to plaintiff's complaint, on or about July 13, 1998, Los Angeles Police Officers Armando Rodriguiz, Juan Parga, and Jose Ramirez fabricated evidence to the effect that plaintiff had committed assault with a deadly weapon, tampered with witnesses, and conspired to obtain the false conviction of plaintiff. Plaintiff further alleges that these LAPD officers, along with defendant William Eagleson, fabricated additional evidence to cause plaintiff's false conviction, and that all of them caused the kidnapping of plaintiff.
 
 
 3
 Due to these activities, plaintiff alleges that he was deprived of his ability to earn a living and suffered economic harm; namely, he asserts that, "[a]mong other forms of injury, plaintiff lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that plaintiff was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated."
 
 
 4
 Defendants moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) based on the contention that Diaz had not sufficiently alleged injury to business or property as required by the RICO statute. The district court agreed and dismissed Diaz's complaint without prejudice and with leave to amend. Diaz opted to stand by his allegations as originally pled and, in turn, allowed the period for amendment to expire. Upon the district court's subsequent dismissal with prejudice, Diaz appealed to this court.
 
 STANDARD OF REVIEW
 
 5
 A district court's order of dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir.1996). The review is limited to the contents of the complaint, id., although all allegations of material fact in the complaint are taken as true and construed in the light most favorable to plaintiff. Argabright v. United States, 35 F.3d 472, 474(9th Cir.1994). The district court's order of dismissal should be affirmed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir.1993) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). The court may, however, affirm the district court's dismissal for failure to state a claim on any basis supported in the record. Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir.1999).
 
 DISCUSSION
 
 6
 RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (2003). Section 1962, in turn, lists four separate acts which form the basis for RICO liability: (a) to invest income derived from a pattern of racketeering activity in an enterprise; (b) to acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) to conduct the affairs of an enterprise through a pattern of racketeering activity; or (d) to conspire to commit any of the above acts. 18 U.S.C. § 1962(a)-(d). A plaintiff must show, therefore, an injury to business or property as well as a violation of one or more of the four acts above to recover under RICO.
 
 
 7
 RICO is to be construed broadly, Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497-98, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); however, despite Congress's expansive design, see United States v. Turkette, 452 U.S. 576, 586-87, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and express admonition that RICO is to "be liberally construed to effectuate its remedial purposes," Pub. L. 91-452, § 904(a), 84 Stat. 947, it is well established that not all injuries are compensable under RICO. See Oscar v. Univ. Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir.1992).
 
 
 8
 To recover under RICO, a plaintiff must demonstrate injury to business or property. A showing of such injury requires proof of concrete financial loss, not "mere injury to a valuable intangible property interest." Id. (quoting Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990) (refusing to consider cancellation of insurance policy injury to property; viz, the loss of "protection ... afforded against potential financial loss in the future and the present peace of mind that flows from such protection" constituted personal injury, not injury to property)).
 
 
 9
 Moreover, this and other courts have consistently held that personal injuries are not recoverable under RICO. Id. at 785-86 (citing Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (dictum); Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3rd Cir.1991) (plaintiffs could not recover medical expenses and emotional distress resulting from their exposure to toxic waste); Berg, 915 F.2d at 464 (loss of security and peace of mind due to cancellation of insurance policy were not actionable under RICO); Rylewicz v. Beaton Services, Ltd., 888 F.2d 1175, 1180 (7th Cir.1989) (harassment and intimidation of litigants in an attempt to get them to settle lawsuit could not support RICO claim), rejected on other grounds by Schiffels v. Kemper Financial Services, Inc., 978 F.2d 344, 351 (7th Cir. 1992); Grogan v. Platt, 835 F.2d 844, 846-47 (11th Cir.1988) (family of murder victim could not recover under RICO for economic consequences of murder), cert. denied, 488 U.S. 981, 109 S.Ct. 531, 102 L.Ed.2d 562 (1988); Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir.1986) (damages for physical injury and wrongful death resulting from exposure to toxic waste were not recoverable under RICO)).
 
 
 10
 Notably, in Grogan, cited with approval in both the Oscar majority and dissent, the families of murder victims could not recover under RICO for the economic consequences of their relatives' wrongful deaths. Grogan, 835 F.2d at 846-47. The Grogan court noted that
 
 
 11
 [o]ur task ... is not to decide whether the economic aspects of damages resulting directly from personal injuries could, as a theoretical matter, be considered injury to "business or property," but rather to determine whether Congress intended the damages that plaintiffs seek in this case to be recoverable under civil RICO.
 
 
 12
 Id. at 846. Upon considering the appellants' argument that a common-sense interpretation of the words "business or property" necessarily included the economic damages that result from injury to the person, the Grogan court concluded, "In our view, the ordinary meaning of the phrase `injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom." Id. at 847; see also Oscar, 965 F.2d at 791 (Kleinfeld, Hug, and Brunetti, JJ., dissenting) (discussing Grogan: "[M]urder is personal injury, not injury to property, and pecuniary losses flowing from the wrongful death could not transform personal injury into injury to property.").
 
 
 13
 It is true that some courts have found RICO standing in plaintiffs who alleged lost employment opportunity. The Fifth Circuit found standing in a physician who claimed impairment of his capacity to obtain future employment because his reputation was harmed by his association with RICO defendants. Khurana v. Innovative Health Care Systems, Inc., 130 F.3d 143, 149 (5th Cir.1997) (categorizing lost expectation of earnings as lost business income), rev'd on other grounds by Beck v. Prupis, 529 U.S. 494, 505, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Relying on Khurana, a district court found RICO standing in a real estate developer who suffered "injury to his professional reputation." Sadighi v. Daghighfekr, 36 F.Supp.2d 279, 290 (D.S.C.1999). Another district court found RICO standing in a plaintiff claiming interference with the opportunity to pursue union employment. Hunt v. Weatherbee, 626 F.Supp. 1097, 1101 (D.Mass.1986).
 
 
 14
 At first blush, it might appear that Diaz's alleged injury is at least as tangible as that alleged in Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir.2002), our most recent decision addressing RICO standing. In Mendoza, documented farm-workers brought a RICO action alleging that fruit growers had conspired to hire undocumented workers in order to depress wages. Id. at 1166. We held that the plaintiffs had alleged sufficient RICO standing to survive a motion to dismiss. "That wages would be lower if, as alleged, the growers relied on a workforce consisting largely of undocumented workers, is a claim at least as plausible enough to survive a motion to dismiss, whatever difficulty might arise in establishing how much lower the wages would be." Id. at 1171. Diaz's claim, however, is distinguishable, not because he alleges loss of wages, but because he has not alleged that the wrongdoing was in any way tied to or directed at his business or property. See National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 258, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("NOW") (RICO defendants who directly target the business of the plaintiff need not have a motive of economic gain). He merely alleges consequential damages.
 
 
 15
 The plaintiffs in Mendoza, Khurana, Sadighi, and Hunt were all targeted by the RICO defendants through their participation in the employment opportunity that was injured by the defendant. In Mendoza, for example, the farmworkers were targeted because they were farmworkers and were injured in their farmworking. That is, they were the most direct victims of a scheme illegally manipulating farmworker wages. Mendoza, 301 F.3d at 1169. In Khurana, a physician claiming injury to his professional reputation was the victim of a scheme that made improper use of this reputation. Khurana, 130 F.3d at 150-51. In Sadighi, plaintiff Riggins, also claiming injury to his professional reputation, was targeted in his capacity as a real estate professional when the defendant used a cover letter Riggins wrote in support of a legitimate loan application to support the defendant's fraudulent loan application. Sadighi, 36 F.Supp.2d at 290. In Hunt, a union carpenter apprentice claiming injury to her ability to earn union wages was harassed in her status as an apprentice by union officers. Hunt, 626 F.Supp. at 1100.
 
 
 16
 In the case at bar, Diaz does not allege that he was targeted in his capacity as an employee or businessperson. His allegation of loss of employment, like an allegation of pain and suffering or an allegation of medical expenses incurred, is simply an allegation that he sustained damage as a consequence of the conduct of which he complains. He has not alleged a sufficient nexus between the RICO act and his "business or property."
 
 
 17
 Diaz alleges only that he "lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that plaintiff was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." Diaz alleges no out-of-pocket expenses resulting from the wrongful acts of the LAPD officers or other defendants. At most, Diaz's alleged injuries could be characterized as "mere injury to a valuable intangible property interest" in his right to pursue employment. See Oscar, 965 F.2d at 785; see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (whether a particular interest in considered property is usually a matter of state law); New Method Laundry Co. v. MacCann, 174 Cal. 26, 31, 161 P. 990 (1916) (holding that "right of a citizen to pursue any calling, business, or profession he may choose is a property right ..."). Nonetheless, such injury is insufficient to satisfy RICO's standing requirement. See Oscar, 965 F.2d at 785 & n. 1 (citing Berg, 915 F.2d at 464); see also Allman v. Philip Morris, Inc., 865 F.Supp. 665, 669 (S.D.Cal.1994) (citing Doe v. Roe, 958 F.2d 763, 768 (7th Cir.1992)) ("[T]he Court will not adopt a state interpretation of `property' that will contravene Congress' intent in enacting RICO.").
 
 
 18
 Further, much like the plaintiffs in Grogan, who pled economic losses stemming from the wrongful death of their relatives, Diaz ultimately alleges injury to his person resulting from his wrongful conviction and incarceration. Losing employment and employment opportunities from false imprisonment is no different than losing such employment opportunities from a wrongful death; the plaintiff in each action incurred some form of personal injury and, in turn, suffered economic injuries therefrom. The Grogan court specifically rejected the notion that the pecuniary and non-pecuniary aspects of personal injury claims may be separated for purposes of RICO; rather the court noted that economic consequences and personal injuries are often intertwined and therefore concluded that "pecuniary losses are so fundamentally a part of personal injuries that they should be considered something other than injury to `business or property.'" Grogan, 835 F.2d at 847. Indeed, it reasoned, "had Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, all of which will cause some financial loss, it could have enacted a statute referring to injury generally, without any restrictive language." Id. (citation omitted) (emphasis added by the Grogan court).
 
 
 19
 Diaz asserts that the Supreme Court decision in NOW saves his claim for loss of employment opportunities, as the Court in that case held that the plaintiffs' allegations that abortion protesters had used "threatened or actual force, violence, or fear to induce clinic employees, doctors, and patients to give up their jobs, give up their economic right to practice medicine, and give up their right to obtain medical services at the clinics" constituted sufficient injury to business or property to proceed under RICO. NOW, 510 U.S. at 253, 114 S.Ct. 798(quoting Second Amended Complaint ¶ 97). Diaz's argument is unavailing, however. The plaintiffs in NOW alleging violations of RICO consisted only of two abortion clinics who complained of harm to their businesses from the protesters' alleged racketeering activities as well as cited losses and harm to their employees, doctors, and patients. Whether the employees, doctors, and patients could withstand a Rule 12(b)(6) dismissal motion if bringing suit on their own behalf was beyond the scope of the NOW decision; the Court simply held that the two clinics had sufficiently established standing to sue under RICO. Diaz's injuries do not resemble those averred in NOW. While the NOW plaintiffs alleged harm to their respective clinic businesses, Diaz's complaint speaks only of personal harm and pecuniary losses stemming therefrom. This type of injury is not the sort Congress sought to redress in enacting RICO. See Grogan, 835 F.2d at 847.
 
 
 20
 Because Diaz failed to allege injury to "business or property," he lacks standing to bring a claim under RICO. Therefore, the district court correctly dismissed his claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).
 
 
 21
 The district court's order of dismissal is AFFIRMED.
 
 
 22
 AFFIRMED.