**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID DIAZ,
             *Plaintiff-Appellant,*

v.

DARYL GATES; WILLIE L. WILLIAMS;
RICHARD ALARCON; RICHARD
ALATORRE; HAL BERNSON; MARVIN
BRAUDE; LAURA CHICK; JOHN
FERRARO; MICHAEL FEUER; RUTH
GALANTER; NATE HOLDEN, et al.,
             *Defendants,*

and

BERNARD C. PARKS, Chief of Los
Angeles Police Department,
             *Defendant-Appellee.*

No. 02-56818

D.C. No.
CV-01-06400-GAF

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
March 22, 2005—San Francisco, California

Filed August 16, 2005

Before: Mary M. Schroeder, Chief Judge, Stephen Reinhardt,
Alex Kozinski, Andrew J. Kleinfeld, Sidney R. Thomas,
Kim McLane Wardlaw, William A. Fletcher,
Ronald M. Gould, Marsha S. Berzon, Jay S. Bybee and
Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Reinhardt;
Concurrence by Judge Kleinfeld;
Concurrence by Judge Berzon;
Dissent by Judge Gould

## COUNSEL

Stephen Yagman, Yagman & Yagman & Reichmann & Bloomfield, Venice Beach, California, for the plaintiff-appellant.

Janet G. Bogigian, Deputy City Attorney, Los Angeles, California, for the defendant-appellee.

## OPINION

PER CURIAM:

We examine whether a false imprisonment that caused the victim to lose employment and employment opportunities is an injury to "business or property" within the meaning of RICO.

### Facts

Diaz claims to be a victim of the Los Angeles Police Department's infamous Rampart scandal. He sued over two hundred people connected with the Los Angeles Police Department (LAPD) or Los Angeles city government under the Racketeer Influenced and Corrupt Organizations Act

(RICO), 18 U.S.C. §§ 1961-1968, alleging that LAPD officers had "fabricated evidence" that he had committed assault with a deadly weapon, and that they had "tampered with witnesses and conspired to obtain [a] false conviction" against him, Compl. ¶ 16. As a consequence, Diaz claims, "[a]mong other forms of injury, [he] lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that [he] was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." Compl. ¶ 31.

Defendant Parks moved to dismiss, arguing, among other things, that Diaz lacked standing because he did not allege an injury to "business or property" as required by RICO. *See* 18 U.S.C. § 1964(c). The district judge agreed and dismissed without prejudice and with leave to amend. Diaz did not amend, and the district judge then dismissed with prejudice. A divided panel of our court affirmed. *Diaz* v. *Gates*, 380 F.3d 480 (9th Cir. 2004). We took the case en banc. *Diaz* v. *Gates*, 389 F.3d 869 (9th Cir. 2004).

## Analysis

**[1] 1.** The district judge, citing *Oscar* v. *University Students Co-operative Ass'n*, 965 F.2d 783 (9th Cir. 1992) (en banc), reasonably applied the law of RICO standing as it existed at the time. In *Oscar*, we held that RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in "concrete financial loss." *Id.* at 785. Oscar, a tenant in an apartment building, alleged that she and her co-plaintiff had "lost the use and enjoyment of their 'property'—that is, their rental interest"— as a result of the racketeering activity in their building, which included drug dealing, violence and "other crimes, misdemeanors, nuisances, and annoyances." *Id.* at 784-85. Because Oscar did not own her interest, we reasoned, the only way she could suffer a financial loss would be "if she had an interest

she could sublet and the racketeering enterprise reduced the rent she could charge to sublet her apartment." *Id.* at 787. But Oscar never alleged that she had wanted or tried to sublet the apartment—or, for that matter, that she had a right to do so—rendering "[a]ny supposed loss . . . purely speculative." *Id.* Thus, we concluded that she had not suffered concrete enough financial injuries for purposes of RICO. The only injuries Oscar properly alleged—"personal discomfort and annoyance," *id.* (quoting *Ingram* v. *City of Gridley*, 224 P.2d 798, 803 (Cal. Ct. App. 1950)) (internal quotation marks omitted) —were personal, and so there was no injury to "business or property" within the meaning of the statute.

[2] Intervening caselaw, which the district judge obviously did not have access to, has clarified the *Oscar* standard. A month after the district judge dismissed Diaz's complaint, we decided *Mendoza* v. *Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002), where a class of agricultural laborers alleged that their employers had depressed their wages by illegally hiring undocumented workers at below-market wages. The agricultural workers could not "show a 'property right' in the lost wages, by showing that they were promised or contracted for higher wages." But they did allege an injury to a property interest, the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *See id.* at 1168 n.4. We held this property interest sufficient to provide standing under RICO. *See id.* at 1168. Diaz has alleged just such an interference with his business relations.

[3] 2. *Mendoza* did not elaborate on the source of the "legal entitlement to business relations," relegating its discussion of the nature of the injury to a footnote. We believe the best-reasoned approach is that of *Doe* v. *Roe*, 958 F.2d 763 (7th Cir. 1992), under which we typically look to state law to determine "whether a particular interest amounts to property," *id.* at 768.

Doe sued her divorce attorney Roe under RICO, alleging that Roe had defrauded her and misused his position to coerce

her into having sex with him over a period of several years. Doe, who had little money, had left her original divorce attorney and retained Roe on the understanding that her (soon to be ex-) husband would pay any fees beyond the retainer fee she had already paid. She acceded to his sexual overtures because she was afraid that he would otherwise stop working on her case, leaving her unable to afford a new lawyer. Doe's husband eventually caught Doe and Roe in the act and, understandably, refused to pay any of Roe's fees. Roe nonetheless demanded full payment for his legal services, but forgave Doe's debts to him in exchange for continuing sexual relations. *Id.* at 765-66.

Doe argued that Roe's wrongful exaction of sexual services was an injury to property and could therefore support her RICO claim. The Seventh Circuit disagreed: "[W]hether a particular interest amounts to property is quintessentially a question of state law." *Id.* at 768. And " 'sexual labor' has no legal value in Illinois, where the courts have long held that contracts for sexual services are unenforceable as a matter of public policy." *Id.* Thus, the requisite business or property interest was missing. *Doe* clearly doesn't stand for the proposition that employment cannot be property under RICO, or it would have been superfluous for the Seventh Circuit to hold that employment as a provider of *sexual* services was not property under state law.

Doe had another theory. After the relationship with Roe turned sour, she alleged, Roe threatened her safety, which made her invest in a home security system and miss several days of work. *Id.* at 769-70; *see also Doe* v. *Roe*, 756 F. Supp. 353, 356, 359 (N.D. Ill. 1991). Naturally, she also hired a new lawyer. Doe argued that the loss of wages, the costs of the security system and the new lawyer, and other "miscellaneous expenditures," 958 F.2d at 769, were injuries to property. Here, too, the court disagreed:

> Doe blurs the distinction between proprietary and personal injuries. Contrary to what Doe seems to

> suggest, whether she can show a financial loss does not, by definition, establish that she has suffered a business or property injury within the meaning of § 1964(c). Most personal injuries—loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few—will entail some pecuniary consequences. . . .
>
> Doe's loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO.

*Id.* at 770. Again, although Doe alleged "loss of earnings," this was deemed insufficient to qualify as a business or property interest under RICO "as construed by Illinois law." *Id.* Thus, no injury to a business or property interest was actually alleged.[1]

**[4]** We agree with the Seventh Circuit. Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO.

**[5]** Contrary to the dissent's suggestion, dissent at 10741-42, our approach does not create RICO liability for every loss of wages resulting from a personal injury. Doe,

---

[1]The dissent claims that "Doe alleged the same injury to business or property as Diaz: lost employment wages," dissent at 10740 n.7, but it confuses the mere loss of something of value (such as wages) with injury to a property interest (such as the right to earn wages). The Seventh Circuit gave no indication in *Doe* that the plaintiff had alleged loss of the right to earn wages as a property interest recognized by Illinois law. Thus, *Doe* does not speak to whether a loss of earnings *could* be an injury to a property interest if a plaintiff properly alleges it as such—as Diaz does. *Doe* merely teaches that financial losses, including lost wages, are insufficient by themselves to confer standing under RICO.

unlike Oscar, suffered some tangible financial losses as a result of her emotional distress, but, like Oscar, failed to allege harm to any property interest valid under state law. Diaz, on the other hand, has alleged both the property interest and the financial loss. The harms he alleges amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law. *See Della Penna* v. *Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 750-51 (Cal. 1995) (discussing torts of "interference with an existing business contract" and "interference with commercial relations"); *see also* Restatement (Second) of Torts § 766A & cmt. e (intentional interference with another's performance of his own contract); *id.* § 766B & cmts. c-d (intentional interference with prospective contractual relations); *Reeves* v. *Hanlon*, 95 P.3d 513, 517 (Cal. 2004) (interference with performance of contract is intentional if defendant knew "that the interference was certain or substantially certain to occur as a result of his or her action"). And his claimed financial loss? He could not fulfill his employment contract or pursue valuable employment opportunities because he was in jail.

**[6] 3.** The three-judge panel tried to distinguish *Mendoza* on the theory that Diaz did not allege "that he lost actual employment, only that he 'was rendered unable to pursue gainful employment.' " *Diaz*, 380 F.3d at 484. This distinction is untenable, for *Mendoza* speaks generally of a "legal entitlement to business relations." 301 F.3d at 1168 n.4. Nor do we endorse such a distinction today, for California law protects the legal entitlement to both current and prospective contractual relations. *See* page 10718 *supra*. There may be a practical difference between current and future employment for purposes of RICO—for instance, it may be easier to prove causation or determine damages for a plaintiff who has lost current employment—but this difference is not relevant to whether there was an injury to "business or property."

**[7]** Similarly, the dissent seeks to distinguish *Mendoza* on the theory that the farm workers' loss of wages was the "di-

rect target" of the conspiracy, while Diaz's injury was "merely derived from," and a "secondary effect" of, his false imprisonment. *See* dissent at 10731, 10734, 10738, 10742. But this distinction founders on the language of the statute: The only requirement for RICO standing is that one be a "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). And the Supreme Court has already told us that "by reason of" incorporates a proximate cause standard, *see Holmes* v. *Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-68 (1992), which is generous enough to include the unintended, though foreseeable, consequences of RICO predicate acts, *see Palsgraf* v. *Long Island R.R. Co.*, 162 N.E. 99, 100-01 (N.Y. 1928).

Though the dissent is wrong to suggest that our approach would confer standing on any plaintiff RICO-suave enough to allege lost employment, it is right to point out that our approach allows more claims to go forward than its more restrictive theory. *See* dissent at 10741-42. But these policy consequences, assuming they are undesirable, cannot blind us to the statutory language. In *Sedima, S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479 (1985), the Supreme Court examined the Second Circuit's narrow interpretation of RICO, which, "[i]n response to what it perceived to be misuse of civil RICO by private plaintiffs," read various limitations into section 1964(c), including the requirement that the racketeering activity have produced a " 'racketeering injury.' " *Id.* at 481. "Racketeering activity" is a broad concept, which "consists of no more and no less than commission of a predicate act." *Id.* at 495. By contrast, a "racketeering injury," under the Second Circuit's definition, was an injury "different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter." *Sedima, S.P.R.L.* v. *Imrex Co.*, 741 F.2d 482, 496 (2d Cir. 1984). While the Supreme Court "underst[ood] the [Second Circuit's] concern over the consequences of an unbridled reading of the statute," which had expanded far beyond the mob-related concerns that

had originally inspired it, *see* 473 U.S. at 481, 499, it rejected such a construction:

> If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement.

*Id.* at 495.

**[8]** There is similarly no room in the statutory language for an additional, amorphous requirement that, for an injury to be to business or property, the business or property interest have been the "direct target" of the predicate act. The statute is broad, but that is the statute we have. Were the standard as the dissent claims, we would have the anomalous result that one could be liable under RICO for destroying a business if one aimed a bomb at it, but not if one aimed at the business owner, missed and hit the business by accident, or if one aimed at the business owner who happened to be in the business at the time.

The dissent's flawed approach is similar to that of *Grogan* v. *Platt*, 835 F.2d 844 (11th Cir. 1988). In *Grogan*, FBI agents wounded and slain in a shootout sued the criminal suspects responsible for their injuries and deaths. The Eleventh Circuit denied recovery, even though the plaintiffs had apparently alleged "lost employment opportunities" as one of their forms of injury, *id.* at 848:[2]

---

[2]We say "apparently" because the Eleventh Circuit does not tell us how the claim for lost employment opportunities was raised in *Grogan*. It is entirely possible that the plaintiffs in *Grogan*, unlike Diaz, failed to allege a right to employment that was recognized as property under state law. This may be why the court treated it as part of their personal injury claim.

> We do not hold that plaintiffs may never recover under RICO for the loss of employment opportunities. We merely hold that the appellants cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim.

*Id.* The Eleventh Circuit's "most properly understood as part of" test is subject to the same critique as the dissent's "direct target" test. Diaz suffered two types of injuries: (1) the personal injury of false imprisonment and (2) the property injury of interference with current or prospective contractual relations. Treating the two as separate, and denying recovery for the first but letting the suit go forward on the second, is both analytically cleaner and truer to the language of the statute.

**[9] 4.** If Diaz properly alleges that his injuries were "by reason of a violation of section 1962," there is nothing to prevent him from "su[ing] therefor." *See* 18 U.S.C. § 1964(c). Diaz's complaint tracks the language of section 1962, which makes it illegal to, among other things, acquire or maintain control of an "enterprise," or conduct or participate in its affairs, through a "pattern of racketeering activity." *Compare id.* § 1962(b)-(c) *with* Compl. ¶¶ 26-27. Diaz alleges that the

---

If so, *Grogan* is consistent with our approach and that of the Seventh Circuit in *Doe*. What we do know for certain, however, is that the Eleventh Circuit does not expressly address the situation where a plaintiff actually alleges a state-protected property interest, as Diaz does here.

The dissent speculates that Diaz must be in the same position as Grogan, because "[w]e have no clue from Diaz's complaint what 'employment' Diaz has alleged to have lost." Dissent at 10741. That misses the point. We may not know precisely what type of employment Diaz alleges to have lost, but we know that Diaz alleges that his lost employment is an injury to a property interest as defined by state law. Reading *Grogan*, we know nothing about how Florida law treated the right to earn wages at the time Grogan brought his lawsuit, nor whether he claimed that his loss amounted to a property interest.

LAPD and various subdivisions are "enterprises" within the meaning of 18 U.S.C. § 1961(4). *See* Compl. ¶ 23. And he alleges acts that seem to fall within the definition of "racketeering activity," 18 U.S.C. § 1961(1), and seem to form a "pattern," *id.* § 1961(5).[3]

Whether these allegations of section 1962 violations are adequate is a matter on which we express no view.[4] The district judge stated that Diaz's complaint "suffer[ed] from many of the same deficiencies . . . previously identified" in another Rampart-related case, *Serrano* v. *City of Los Angeles*, No. CV 00-13356 GAF (AJWx) (C.D. Cal. June 29, 2001) (order dismissing RICO claims), but his dispositive ruling on standing made it unnecessary for him to state precisely which of these deficiencies applied to Diaz's case. We need not determine whether the district judge's incorporation by reference of "many" of the deficiencies identified in a different case was sufficient to provide adequate notice of the particular deficiencies. *Cf. Bonanno* v. *Thomas*, 309 F.2d 320, 322 (9th Cir. 1962). Now that we have set aside the district court's ruling as to standing, the district judge should, if he wishes to reinstate the order of dismissal, identify the specific deficiencies in a supplementary order, and plaintiff should then be given an opportunity to amend his complaint accordingly.

## REVERSED AND REMANDED.

[3]Because the district court only addressed whether plaintiff alleged a proper injury, and not whether the injury was "by reason of" the RICO violation, we decline to address the RICO causation requirement in the first instance. *See Singleton* v. *Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

[4]Nor, at this early stage of the litigation, do we deem it appropriate to speculate as to the merits of Diaz's claim. *Cf.* dissent at 10731 n.1 ("An observer might wonder if there is any substance at all to the RICO claim asserted by Diaz.").

REINHARDT, Circuit Judge, concurring:

I concur in the court's per curiam opinion as well as in Judge Kleinfeld's separate concurrence. I share Judge Kleinfeld's view that, given the construction that RICO has been afforded by the Supreme Court, we are no longer free to read it as an anti-racketeering statute. Rather, starting with *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-500 (1985), it has been stretched both in scope and meaning far beyond that which Congress originally intended and has become, through judicial construction, a wide ranging act that provides treble damages for all kinds of conduct unrelated to the racketeering activity that Congress sought to control. Although I disagree with this construction, we must follow the law as it is determined by the Supreme Court. In my view, however, it is well past the time for our lawmakers to take another look at RICO and consider amending the statute so as to limit it to its original purpose.

KLEINFELD, Circuit Judge, with whom REINHARDT and BERZON, Circuit Judges, join, concurring:

I concur in the result. I write separately because my analysis differs from that in the majority unauthored opinion. I focus on the language of the statute. *Mendoza v. Zirkle Fruit Co.*[1] does not bind us, and in any event speaks mostly to causation rather than standing. *Grogan v. Platt*[2] and *Doe v. Roe*,[3] the Eleventh and Seventh Circuit cases, strain RICO's statutory language. A careful reading of the statute cannot be reconciled with the "personal injury" exclusion in the Seventh and Eleventh Circuit cases.

[1]*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002).

[2]*Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988).

[3]*Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992).

The RICO statute tells us what kinds of injuries give rise to RICO claims. Some are in the nature of "personal injury" claims, and some are not. The section stating what gives rise to a claim, section 1964, says "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court."[4] The words telling us what kind of wrong gives rise to a claim are "by reason of a violation of section 1962." The phrase "injured in his business or property" is a further limitation, speaking not to the nature of the wrong, but rather to the nature of the harm caused by the wrong. The word "therefor" in the phrase "may sue therefor" is a further limitation on the damages that can be awarded. The language telling us what kind of wrong gives rise to a claim, though, is "by reason of a violation of section 1962." That is the only literal reading possible, and it makes perfect sense.

Section 1962, which section 1964 tells us defines the violations giving rise to civil claims, says "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of *racketeering activity* or collection of unlawful debt."[5] This language says quite plainly that two kinds of wrongdoing violate this law: collection of an unlawful debt (not involved in this case) and "racketeering activity." Again, this is the only literal reading possible, and it makes perfect sense.

The phrase "racketeering activity" is defined in section 1961. That extensive definition includes both direct injury to tangible property, such as "arson," and also various kinds of wrongdoing that constitute "personal injury." Among the "personal injury" wrongs that can constitute "racketeering activity" are "murder" and "kidnapping." "Murder" is not an

---

[4] 18 U.S.C. § 1964(c).

[5] 18 U.S.C. § 1962(c) (emphasis added).

injury to business or property. It is a personal injury to a human being. Likewise kidnapping is also a personal injury to a human being. Murder and kidnapping fall within the "personal injury" torts of "wrongful death" and "false imprisonment." There is no legitimate way to read the statute to exclude traditional personal injuries from actionable RICO racketeering conduct, because traditional personal injuries, including murder and kidnapping, are expressly listed in section 1961 as "racketeering" conduct that can give rise to claims under the statute.

Here is the plain and express logic of the statute: (1) section 1964 establishes a civil cause of action for a violation of section 1962; (2) section 1962 uses a term of art defined in section 1961 to denote violations; (3) section 1961 expressly provides that various personal injuries, as well as other kinds of wrongdoing, constitute the misconduct giving rise to a cause of action. I see no way around this plain language of the statute. That is why I part ways from *Grogan* and *Doe*, the Seventh and Eleventh Circuit cases holding that personal injury claims cannot give rise to RICO standing. If they were right, then the words "murder" and "kidnapping" in the statute would have to be wrong, which is impossible. Our tools of statutory construction do not include an eraser.

That is not the end of the standing inquiry. Conduct "by reason of" a section 1962 violation is necessary, but not sufficient, for standing.[6] For a complaint to state a claim upon which relief can be granted, the plaintiff must allege not only a section 1962 violation but also that he was "injured in his business or property." This second requirement is more of a problem for Diaz. The problem, though, is not whether the

---

[6]I have used the word "standing" here because the RICO cases generally use it. I am among those who prefer to use the term "standing" for Article III purposes, and would prefer that the analysis be made under the rubric of "stating a claim upon which relief can be granted under section 1964." They come to the same thing here.

gravamen of his complaint is "personal injury," because even if he alleged nothing but personal injury, that could plainly be a section 1962 violation. The problem is whether the personal injury caused injury to business or property. Not everyone who suffers a racketeering injury denoted by section 1962 can state a claim under section 1964. Only those to whom the racketeering conduct caused injury to business or property can state a claim.

Murder or kidnapping can cause injury to business or property, as well as personal injury. Suppose America suffered the frequent kidnapping for ransom of business executives that some countries do. If the business pays the ransom, it has been injured by the kidnapping. Or imagine that a person whom a business needs to function is murdered — perhaps a medical researcher who employs himself through an incorporated laboratory and obtains millions of dollars in research grants and contracts, and employs dozens of other people. The murder may well destroy the business, make it unable to pay its debts, and put all the employees out of work, giving them claims against the business for breach of their employment contracts. The laboratory corporation is a "person injured in his business" "by reason of" a section 1962 violation — murder. In these hypotheticals, I assume, of course, that a racketeering enterprise committed the wrongful conduct and that the section 1962 conduct caused the harm. The significance of the hypothetical cases is to illustrate that section 1962 personal injuries, such as murder and kidnapping, may indeed give rise to "injury to business or property" under section 1964.

Diaz's claim to be a "person injured in his business or property" is more tenuous than the victims' claims in these hypothetical cases, but sufficient nonetheless. He pleads that, as a result of the putative RICO wrong, he lost the chance to get employment because he was in jail or absorbed with defending himself against the criminal charges he claims were

the fraudulent result of police racketeering. That states a claim that he was "injured in his business."

A person does not have to wear a suit and tie to be engaged in "business." A salaried employee might or might not, in ordinary speech, be characterized as a "businessman," but a sole proprietor of a service business unquestionably runs a "business." For example, the owner of "AAA Snowplowing" is a businessman who owns a service business, and makes his living from it when he comes around with a blade on the front of his pickup truck after a snowfall. Dentists and lawyers are also businessmen who own and run businesses. So is a person who stands on a corner and waits to get picked up to do odd jobs as an independent contractor. There is no principled way to sort out who among sole proprietors has a "business" and who does not. They all do.

What about people who seek only to be employed, in the common law sense of a master-servant relationship, by someone else? Diaz's complaint is not clear on whether this is all he meant to do, or whether he meant to sell his services as a sole proprietor. Sound statutory construction proceeds from "attributing a rational purpose to Congress."[7] As Judge Learned Hand wrote, "statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."[8] If the statute as construed one way makes sense, and as construed another does not make any sense and is wholly arbitrary, the wholly arbitrary construction is a dubious attribution of fecklessness to the legislature. I cannot see what purpose Congress could have intended to serve by limiting "person injured in his business" to some forms of earning a living but not others. Many firms operate in part with common law employees and in part with independent contractors, and many individuals work

---

[7]*Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311 (9th Cir. 1992).

[8]*Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945).

sometimes as one, sometimes the other, depending on what form of work is more attractive or available at the time. The distinction between "business" and employment is so tenuous and uncertain that it is hard to see why we should attribute to Congress a purpose of making it, especially since they did not make it expressly.

The manifest statutory purpose of requiring not only injury "by reason of" section 1962 misconduct, but also injury to "business or property," is to exclude claims for other kinds of injuries, even those arising from denoted racketeering conduct. For example, a person who suffered physical injury and mental distress, but no injury to his business or property, on account of racketeering misconduct of the sort denoted in sections 1962 and 1961, could not state a claim upon which relief could be granted under section 1964. Congress likely chose to address this sort of harm in order to focus upon the harm racketeering does to interstate commerce.

As for our en banc decision in *Oscar v. University Students Co-operative Association*,[9] it is not much help in resolving this case. The issue in *Oscar* was whether the plaintiffs were "injured in [their] business or property" by drug dealing next door. The majority in *Oscar* did not think so because the reduction in the value of the apartments they rented was not "financial loss to property"[10] or "concrete financial loss."[11] I dissented, taking the position in dissent that there was injury to property because a leasehold estate is itself property, and damage does not have to be "concrete" or "financial" to be property damage. My thought was that the majority could not be right that damage has to result in "concrete financial loss" to give rise to a claim. For example, if racketeering conduct on the freeway dents someone's car, the car's owner has suf-

---

[9]*Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783 (9th Cir. 1992) (en banc).

[10]*Id.* at 787.

[11]*Id.* at 785.

fered injury to property, even if he drives with the dent and neither gets the car fixed nor sells it. He does not suffer any "concrete financial loss," because he has the same amount of money that he did before, but his property was injured.

Judge Gould makes the sensible point that claims such as this one for police misconduct ordinarily are and should be brought under 42 U.S.C. section 1983. I do not disagree, but I also do not see much risk of opening any floodgates by taking the words of the RICO statute to mean what the Supreme Court has told us they mean.[12] Though the RICO statute allows treble damages, the damages it allows, and allows to be trebled, are limited to injury to business or property. That limitation, particularly in light of the limited business and property of a considerable proportion of persons who are arrested, makes section 1983 a more attractive path for relief in most cases, and there is little practical need for us to put an artificial dam in the channel.

The lower courts have repeatedly adopted non-literal narrowing interpretations of RICO, so that it would apply only to what "racketeering" would mean if the word were not converted into a special term of art by the statute as construed by the Supreme Court. The lower courts' view has a lot of practical and linguistic appeal. And who can hear the word "RICO" without seeing in the mind's eye, Edward G. Robinson, in Little Caesar?[13] But the Supreme Court has decided that RICO's statutory language just does not permit the courts to limit it to dishonest businesses that make their money through fraud and extortion. When it was passed, many ascribed to RICO the purpose of facilitating remedies against "mobsters and organized criminals."[14] As the Supreme Court has construed the words of the statute since then, though,[15] there is no way

---

[12]*See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-500 (1985).

[13]*Little Caesar* (Warner Bros. 1931).

[14]*Sedima*, 473 U.S. at 499.

[15]*See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256-262; *see also Sedima*, 473 U.S. at 499-500.

to corral RICO so that it would apply only to "racketeering" as that word may initially have been understood and as it is defined in the dictionary.[16] I agree with Judge Gould that, because of his attempted murder and assault convictions, Diaz will likely face an uphill battle against a motion for summary judgment. But this is a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). We are limited to the question whether, if proved, the averments of the complaint would state a claim under the statute. They do.

---

BERZON, Circuit Judge, concurring:

I concur in the court's per curiam opinion as well as in Judge Kleinfeld's separate concurrence.

---

GOULD, Circuit Judge, with whom SCHROEDER, Chief Judge, BYBEE and CALLAHAN, Circuit Judges, join, dissenting:

I respectfully dissent, and would affirm the district court's decision that there was no standing under RICO because Diaz's complaint did not sufficiently allege an "injury to business or property" within the meaning of the statute.

The majority acknowledges that the district court "reasonably applied the law of RICO standing as it existed at the time," Maj. Op. at 10714, but then concludes that the reasoning of our intervening decision in *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002), now requires reversal.

---

[16]*See The American Heritage Dictionary* 1021 (2d ed. 1985) (defining "racket" as a "dishonest business or practice, esp. one that obtains money through fraud or extortion").

*Mendoza*'s determination of standing was understandable on its facts, where the conspiracy challenged under RICO was aimed directly at suppressing the wages of farm workers. There the plaintiffs, legal agricultural laborers in eastern Washington, the heartland of Washington's fruit industry, in their RICO complaint had pleaded that the defendant fruit growers' scheme was illegally and systematically to hire undocumented immigrants in order to depress the wages of documented workers. *Id.* at 1166-67. But in that case we did not address the situation we face here, where the alleged loss of employment is merely an indirect and secondary effect of a non-compensable personal injury, Diaz's alleged "false" imprisonment.[1] Thus *Mendoza* is plainly distinguishable in so far as the illegality there alleged was aimed at the workers' wages. The majority errs in improvidently extending *Mendoza*, in which the illegal scheme took dead aim at wage

---

[1]Diaz was convicted on charges that he alleges were trumped up, relying on the Rampart scandal that tarnished the Los Angeles Police Department. The premise that he was "unjustly incarcerated"—which is the underlying basis of his RICO claim—is highly questionable. We granted the appellee's motion that we take judicial notice, pursuant to Federal Rule of Evidence 201, of the post-conviction decisions rendered in appellant Diaz's criminal case. The California Court of Appeal affirmed Diaz's 1999 conviction for "attempted murder, aggravated mayhem, assault by means likely to produce great bodily injury, and assault with a semiautomatic weapon, with enhancements for discharging a firearm causing great bodily injury, firearm use and infliction of great bodily injury," and the California Supreme Court and United States Supreme Court denied his petitions for further review. *See People v. Diaz*, 115 Cal. Rptr. 2d 799, 801-02 (Cal. Ct. App. 2002), *reh'g denied* (Feb. 22, 2002), *review denied* (Apr. 17, 2002), & *cert. denied*, 537 U.S. 907 (2002). Diaz subsequently filed a federal habeas petition in the United States District Court for the Central District of California, which has been denied by the district court. Moreover, in that habeas petition, Diaz argued only that his right to a fair trial and due process were violated by the removal of a juror; he did not contest the sufficiency of evidence to support his conviction. An observer might wonder if there is any substance at all to the RICO claim asserted by Diaz. Because I conclude the district court correctly found no standing, I need not address other grounds for affirmance that may be supported by the record.

levels and workers' livelihoods, to apply here, in a case nothing like it. In any event, because we sit en banc to review Diaz's case, we are not bound by a prior panel opinion, so *Mendoza* poses no barrier to the majority analyzing the law of RICO standing.

I would hold that Diaz's claim of employment loss was derived from, and a secondary effect of, his alleged false imprisonment, and any economic losses are part of Diaz's injury to his person, not distinct injuries to his business or property within the meaning of RICO. By extending *Mendoza*, the majority creates a split with the Eleventh Circuit decision in *Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988), and the Seventh Circuit decision in *Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992), both of which held that pecuniary losses incurred as a result of personal injuries were noncompensable under RICO.

## I

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, provides a civil remedy of treble damages to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." *Id.* at § 1964(c). *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."). It is well-established that not all injuries are compensable under RICO, *id.* at 496-97, and a previous en banc panel of our court held that the language of 18 U.S.C. § 1964(c) excluded recovery for personal injuries, *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) ("[I]t is clear that personal injuries are not compensable under RICO.").[2]

---

[2]Our holding in *Oscar* that personal injuries are not compensable under RICO is in accord with the decisions of our sister circuits, *see, e.g.*, *Hamm*

In *Oscar*, the tenants of an apartment building brought a RICO action against a neighboring student cooperative seeking to recover for losses due to the students' unruly behavior in the neighboring apartment. *Id.* at 784-85. Our en banc panel affirmed the district court's dismissal of the plaintiffs' claims because the tenants did not allege an injury to business or property cognizable under RICO. *Id.* at 785. Our decision rested on two bases. First, we held that a showing of injury requires "proof of concrete financial loss" and is "not actionable under RICO unless [it] result[s] in tangible financial loss to the plaintiff." *Id.* at 785 (citing *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990). The plaintiffs failed to allege any pecuniary injury to their property, because, as renters, they did not own the property, and therefore could not allege property value decline because of the alleged acts of their neighbors. *Id.* at 786-87.

Second, we concluded that the tenants' injury was not an injury to their property; rather, the injury asserted was for "the

*v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999); *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995); *Libertad v. Welch*, 53 F.3d 428, 437 (1st Cir. 1995); *Roe*, 958 F.2d at 767; *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918-19 (3d Cir. 1991); *Grogan*, 835 F.2d at 847; *Drake v. B.F. Goodrich, Co.*, 782 F.2d 638, 644 (6th Cir. 1986), as well as in step with the analogous guidance of the Supreme Court. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (interpreting RICO and the Clayton Act in tandem and stating that "[Congress] used the same words [in RICO and the Clayton Act], and we can only assume it intended them to have the same meaning that courts had already given them."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (construing the same 'business or property' language in the Clayton Act and holding that "[t]he phrase "business or property" also retains restrictive significance. It would, for example, exclude personal injuries suffered."); *see also Sedima*, 473 U.S. at 509 (Marshall, J., dissenting) ("In addition, the statute permits recovery only for injury to business or property. It therefore excludes recovery for personal injuries."); *but cf. Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 149 (5th Cir. 1997). Although three judges of our circuit dissented in *Oscar*, they, too, agreed that personal injuries are not compensable under RICO. 965 F.2d at 789 (Kleinfeld, J., dissenting).

personal discomfort and annoyance" of the defendants' nuisance activities, which, as a "personal injury action," was not actionable under RICO. *Id.* at 787-88 ("It is clear, however, that any injury [the plaintiffs have] suffered is at core an intangible personal injury, not a financial loss to property."). We held that a personal injury action like nuisance is not actionable, "even when it flows from a valuable property interest." *Id.*

Under *Oscar*, then, a claim of false arrest and imprisonment, as a personal injury, is not compensable at all in a RICO action. *See, e.g.*, *Owens v. Okure*, 488 U.S. 235, 240-41, 251 (1989) (explaining that § 1983 claims based on false arrest and imprisonment are "best characterized as personal injury actions" and are subject to a state's statute of limitations for personal injuries); Black's Law Dictionary 790 (7th ed. 1999) (defining "personal injury" to include "false imprisonment"). Diaz's allegation of lost employment wages, even construed most favorably to Diaz,[3] was at best merely derived from, and a secondary effect of, his underlying injury of alleged false imprisonment. This circumstance, which was not raised in *Mendoza*, squarely presents the question whether an injury to business or property sufficient for RICO standing purposes can be derived from a non-compensable personal injury.

In our prior en banc decision in *Oscar*, as in *Mendoza*, we

---

[3]Diaz's complaint alleged numerous injuries, the relevant one being, "lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that plaintiff was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated." Depending on how one reads the complaint, Diaz either alleged the loss of employment while he was incarcerated, or he alleged the loss of the ability to pursue gainful employment, or both. Construing Diaz's complaint generously, as we must in reviewing a 12(b)(6) dismissal, *see, e.g.*, *Pegram v. Herdich*, 530 U.S. 211, 230 n.10 (2000), the allegation is sufficient to raise the issue of loss of actual employment.

did not directly address this question. However, in *Oscar* we did cite approvingly two cases from sister circuits that had answered this question by concluding that a plaintiff's allegations of lost employment were insufficient for RICO standing if they were derived from non-compensable personal injuries. *See Oscar*, 965 F.2d at 786 (citing *Grogan*, 835 F.2d at 846-47); *id.* at 788 (citing *Doe*, 958 F.2d at 770).

In *Grogan*, the estates of deceased federal agents involved in a shootout with criminal suspects brought an action against the suspects seeking damages under RICO. The appellants argued that "injury to business or property" included the economic damages that resulted from the injury to the person, such as lost employment or wages. The Eleventh Circuit concluded that the surviving relatives could not recover under RICO for the loss of earning power or employment resulting from their wrongful death claim, holding that the predicate RICO act of the killing of the officers (murder or wrongful death) was a personal injury, not an injury to their "business or property" for purposes of RICO, even though there were tangible economic consequences that resulted from the deaths. *Id.* at 847 ("In our view, the ordinary meaning of the phrase, 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom."). The Eleventh Circuit in *Grogan* concluded that if Congress had intended the derivative economic damages like the loss of employment to be recoverable under a civil RICO suit, it would not have used the restrictive "business or property" language of 18 U.S.C. § 1964(c). *Id.* ("Had Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, *all of which will cause some financial loss*, it could have enacted a statute referring to injury generally, without any restrictive language.") (quoting *Morrison v. Syntex Lab., Inc.*, 101 F.R.D. 743, 744 (D.D.C. 1984)).

In *Doe*, the Seventh Circuit considered a case in which a female client had sued her former divorce attorney under

RICO for damages stemming from misuse of his position to coerce and intimidate her into having sexual relations with him. 958 F.2d at 765-67. The plaintiff alleged injury to her business and property through, *inter alia*, a loss of employment wages, which she alleged were cognizable injuries to her property under RICO. *Id.* at 766, 769-70. The Seventh Circuit disagreed, holding that the plaintiff's claim of lost employment pay stemmed from emotional distress, a personal injury, and that "[t]he terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Id.* at 767, 770. The court concluded:

> Doe blurs the distinction between proprietary and personal injuries. Contrary to what Doe seems to suggest, whether she can show a financial loss does not, by definition, establish that she has suffered a business or property injury within the meaning of § 1964(c). Most personal injuries—loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few—will entail some pecuniary consequences. . . . Doe's loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO.

*Id.* at 770.

## II

Because we cited both *Grogan* and *Doe* favorably in our previous precedent,[4] it is not surprising that the district court

---

[4]*See Oscar*, 965 F.2d at 786 (citing *Grogan* in support of its holding that personal injuries are not compensable under RICO); *id.* at 788 (citing *Doe*); *id.* at 791 (Kleinfeld, J., dissenting) (citing *Grogan* for the holding

relied on them, in conjunction with *Oscar*, in dismissing Diaz's complaint for lack of standing. In my view the district court properly applied the law. The majority almost recognizes this, but then holds that our decision in *Mendoza* vitiates the district court's reliance. However, as I have mentioned above and now reiterate, *Mendoza* did not raise the issue we face, is distinguishable, and cannot properly be extended to apply here.

In *Mendoza*, the documented farm workers who brought suit asserted a RICO claim alleging that the eastern Washington fruit grower defendants had conspired to hire undocumented workers in order to depress the documented workers' wages. *Id.* at 1166-67. The farm workers' complaint alleged that the fruit growers knowingly hired illegal alien workers because they knew that the undocumented workers would be forced to accept wages significantly lower than that which would otherwise be paid to legally authorized workers. *Id.* We held that the plaintiff farm workers sufficiently alleged an injury to their property in the form of lost employment wages. *Id.* at 1168 & n.4.[5] Relying on *Mendoza*, the majority now concludes that Diaz's claim of lost employment wages when he was imprisoned is similarly sufficient to allege injury to his business or property. Maj. Op. at 10715.

---

that the presence of pecuniary losses cannot transform a personal injury into an injury to property); *see also Berg*, 915 F.2d at 463 (quoting *Grogan* at length and concluding that "[w]e follow the Eleventh Circuit and hold that, as a matter of law, personal injury, including emotional distress, is not compensable under section 1964(c) of RICO. Even if the directors had incurred pecuniary losses from emotional distress, they would not be compensable under RICO.").

[5]The panel in *Mendoza* stated: "[W]hat is required [to sufficiently allege injury to business or property] is precisely what the employees allege here: a legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *Id.* at 1168 n.4. In context the rule of *Mendoza* does nothing more than give RICO standing when the wages of employees are directly hampered by an alleged illegal scheme.

Although we said in *Mendoza* that "[t]he employees allege[d] an injury to their property in the form of lost wages," in that case the loss of the farm workers' employment wages was the direct target of the RICO predicate act, a scheme designed to drive down farm labor prices by using illegal workers. 301 F.3d at 1168-69 ("[T]he employees allege that the illegal hiring scheme was divined in order to depress the normal labor market."), *id.* at 1170 ("[T]he alleged scheme here was intended to give the growers a contract advantage at the expense of the documented workers, a direct . . . injury."). It was not a case, like Diaz's, where the alleged loss of employment was solely an indirect effect of a personal injury to Diaz (his false imprisonment). Stated another way, the lost income to laborers in *Mendoza* was not a secondary or derivative consequence of a personal injury to the farm workers, but rather the direct result of the scheme that aimed at lowering their wages. Diaz has not alleged (nor can he) that his false imprisonment was in any way related to, or directed at, his business or property. Diaz's allegation is much more like that in *Grogan*, where the employment losses directly stemmed from another type of personal injury—wrongful death—than like that in *Mendoza*, where the loss of wages alleged as injury had been the precise aim of the alleged illegal conduct and conspiracy of growers.[6]

---

[6]In any event, we sit en banc and are not bound by the *Mendoza* panel decision. *See* Fed. R. App. P. 35(a); Ninth Cir. R. 35-1; *Thompson v. Calderon*, 120 F.3d 1045, 1051 (9th Cir. 1997), *rev'd on other grounds*, 532 U.S. 538 (1998). It might make sense to defer to a previous panel's persuasive analysis of the difficult question posed by Diaz's case but that is not the case with *Mendoza* which neither pondered nor ruled on the standing issues raised by a claim incidental to personal injury. Further, the panel in *Mendoza*'s self-described "key task" was the causation inquiry of RICO standing: to "determine whether [the farm workers'] injury was 'by reason of' the growers' alleged violations." 301 F.3d at 1168. While the panel discussed causation for four pages, *id.* at 1168-72, it only touched upon the "injury to business or property" requirement in one textual sentence and accompanying footnote. *Id.* at 1168 & n.4. As I have explained, *Mendoza*'s statement on injury to business or property can be understood in the context of a conspiracy to depress wage rates, but did not by its own terms or reasoning reach the case of lost income resulting from false imprisonment.

**III**

The majority acknowledges that in *Mendoza* we did not "elaborate" on the question at bar, "relegating its discussion of the nature of the injury to a footnote." Maj. Op. at 10715. As I have explained above, that case should not be interpreted to apply, especially where doing so creates a circuit split, runs against the declared aims of Congress, and is in tension with Congress's language of RICO. Instead of extending *Mendoza* to the case of Diaz so unlike it, I would simply follow the Seventh and Eleventh Circuits by holding that Diaz's claim of employment loss was derived from, and a secondary effect of, his allegedly false imprisonment, and any economic losses are part of Diaz's injury to his person, not distinct injuries to his business or property within the meaning of RICO. *See Grogan*, 835 F.2d at 847 (holding that intertwined economic consequences of personal injuries "are so fundamentally a part of personal injuries that they should be considered something other than injury to 'business or property' "); *see also Oscar*, 965 F.2d at 791 (Kleinfeld, J., dissenting) (citing *Grogan* for the proposition that "murder is personal injury, not injury to property, and pecuniary losses flowing from the wrongful death could not transform personal injury into injury to property").

Realizing that *Mendoza* alone cannot support its holding, the majority purports to rely on *Doe*, describing the Seventh Circuit's approach as the "best-reasoned" one. Maj. Op. at 10715. The majority's reliance is misplaced, and its reading of *Doe* selective and incorrect. The plaintiff in *Doe* alleged several different injuries to her business or property, all of which were found to be non-compensable by the Seventh Circuit. The Seventh Circuit affirmed the district court's dismissal of some of Doe's claims because the court determined that, as an initial matter, the injuries alleged were not injuries to a business or property interest, as determined by the applicable state law. *Doe*, 958 F.2d at 767-68 (affirming the district court's dismissal of Doe's allegation of injury to her

business or property from her divorce lawyer's coercive extraction of her sexual services because "sexual labor has no legal value in Illinois," and thus Doe's sexual relations with her former attorney was not an injury to her business or property for purposes RICO). However, Doe also alleged that she missed days of work—her gainful employment—due to the defendant's constant harassment and intimidation of her. *Id.* at 766 ("As a result of this pattern of harassment and intimidation, Doe missed work for several days and had to purchase an enhanced security system for her car and garage."). The Seventh Circuit concluded that such an allegation was still insufficient for standing to bring a RICO claim because such injury stemmed from a non-compensable personal injury: "*Doe's loss of earnings*, her purchase of a new security system and her employment of a new attorney are *plainly derivative* of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO." *Id.* at 770 (emphases added) (citing, *inter alia*, *Grogan*, 835 F.2d at 847). Thus, although the majority fails to recognize it, in *Doe* the Seventh Circuit addressed the same situation we face here —an allegation of lost employment wages stemming from a non-compensable personal injury. Diaz allegedly missed work because he was falsely incarcerated, while Doe allegedly missed work due to the continuous threats and harassment of her former divorce attorney. Both plaintiffs alleged injury to business or property wholly derived from personal injuries (false imprisonment and emotional distress, respectively). This inescapable truth belies the majority's purported reliance on *Doe* for its extension of *Mendoza*; the majority is actually in conflict with *Doe*, just as it is in conflict with *Grogan*.[7]

---

[7]The majority correctly acknowledges Doe's allegation of lost employment, but incorrectly, and confusedly, concludes that "no injury to business or property was actually alleged." Maj. Op. at 10717. Doe alleged the same injury to business or property as Diaz: lost employment wages. If, as the majority concludes, Doe did not allege any injury to her business or property, then neither has the plaintiff in the case at bar alleged an injury to his business or property.

The majority denies it creates a circuit split with *Grogan*, attempting to disguise, distract, or detract from the circuit split by claiming that the plaintiffs in *Grogan* might not have alleged a loss of employment recognized as property under the applicable state law. Maj. Op. at 10720-21 n.2. The same critique can be made of Diaz: We have no clue from Diaz's complaint what "employment" Diaz has alleged to have lost, if any, while he was "unjustly" incarcerated, and whether that employment would be considered property or business under California law, or not. By comparison, we can say with some certainty what loss of employment wages was alleged in *Grogan* because, unlike in this case, we know for a fact that the plaintiffs in that case were gainfully employed: They were former agents of the Federal Bureau of Investigation who narrowly escaped death in a gun battle with suspected bank robbers, and the estates of those FBI agents who were not so fortunate. *Grogan*, 835 F.2d at 845. The majority should concede that FBI employment would qualify as a state-protected property interest under its own test, and this undermines the majority's argument, resting on the incorrect premise that in *Grogan* no valid state property right was alleged, involved, or evoked.

## IV

In *Oscar*, we concluded by quoting with approval from the Seventh Circuit's *Doe*: "Perhaps the economic aspects of [a fundamentally personal injury] could, as a theoretical matter, be viewed as injuries to 'business or property,' but engaging in such metaphysical speculation is a task best left to philosophers, not the federal judiciary." *Oscar*, 965 F.2d at 788 (quoting *Doe*, 958 F.2d at 770). Following this logic, I would today hold that an allegation of lost employment that flows from a personal injury is not a separate injury to business or property, but rather is a derivative part and parcel of the underlying non-compensable personal injury. *See Grogan*, 835 F.2d at 848 ("We do not hold that plaintiffs may never recover under RICO for the loss of employment opportunities.

We merely hold that the appellants cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim."). In holding otherwise, the majority opens the RICO door to any plaintiff's lawyer savvy enough to include an allegation that other wrongs lead to any degree of lost employment, leaving district courts and appellate panels the undesirable job of "metaphysical speculation" against which the *Oscar* and *Doe* courts warned. Instead of giving the "injury to business or property" requirement "restrictive" meaning, *see Reiter*, 442 U.S. at 339, as did the Eleventh Circuit in *Grogan* and the Seventh Circuit in *Doe*, the majority's interpretation goes far to read the "business or property" requirement out of the statute, as there likely may be an indirect, hypothetical, and derivative loss of wages whenever there is a personal injury of a person who is otherwise employed.[8] Yet it is wrong in theory and imprudent in practice for us to ignore the restrictive language set by Congress. *Id.* ("In construing a statute we are obliged to give effect, if possible, to every word Congress used."). If Diaz's complaint has sufficiently stated a claim under RICO, then the majority's decision means that there is no meaningful "injury to business or property" standing limitation at all. The majority's view here takes RICO beyond the bounds that were set by Congress. Indeed, the majority strains to expand RICO for no good reason as well, because persons with asserted injuries like those urged by Diaz have a plain and satisfactory remedy in bringing a 42 U.S.C. § 1983 action, if timely asserted, for violation of their civil rights. I respectfully dissent.[9]

---

[8]The majority argues that my position creates a new requirement for RICO standing that was not set by Congress, but this argument is off the mark. I merely point out that some direct injury to a business or property should be required to meet the statutory element set by Congress, which will be disregarded under the majority's theory because almost any personal injury will cause a loss of some actual or potential employment.

[9]Statutory standing under 18 U.S.C. § 1964(c) also includes a causation requirement that encompasses factual and proximate causation, including as a "central element[ ]" a "direct relation between the injury asserted and

the injurious conduct alleged." *See Holmes*, 503 U.S. at 268-69; *see also Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 185 F.3d 957, 963 (9th Cir. 1999). While the majority does not address this RICO standing requirement, it is not clear that Diaz's complaint sufficiently alleged causation. Any allegedly "injurious conduct" of the defendant-appellee LAPD Chief Parks, was followed by a series of intervening causes independent of Parks before "causing" Diaz's loss of employment: the prosecutor who decided if, when, and how to prosecute Diaz; the state trial judge who presided over the case; the jury who convicted Diaz; and the state courts of appeal that have subsequently affirmed his conviction. *Cf. Anderson v. Ayling*, 396 F.3d 265, 270 (3d Cir. 2005) (holding that there was an insufficient nexus between the alleged RICO injury and the defendants in part because the defendants' actions were "filtered through [a] long chain of intervening causes"). Because I conclude that the district court correctly found no "injury to business or property" within the meaning of RICO, this compels the conclusion that there is no RICO standing, and I need not reach whether Diaz has otherwise satisfied the standing requirement by sufficiently alleging causation. By contrast, because the majority errs by concluding that there is injury to business or property, it also then errs by not addressing the standing requirement of causation.