Filed 9/13/24  Wilson v. Interinsurance Exchange of the Automobile Club CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SEAN WILSON et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB et al.,<br><br>    Defendants and Respondents. | D081856<br><br><br>(Super. Ct. No. 37-2018-00006964-CU-FR-NC) |

APPEAL from judgments of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Quade & Associates, Michael W. Quade and Cheryl L. Gustafson for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, John T. Brooks, Joseph E. Foss, Thomas R. Proctor, and Matthew G. Halgren for Defendants and Respondents.

# I. INTRODUCTION

Sean Wilson and Chet Johnston[1] (collectively Appellants) appeal from judgments of dismissal of their individual claims entered after the trial court granted motions for summary judgment brought by respondents Interinsurance Exchange of the Automobile Club, Auto Club Enterprises, and Automobile Club of Southern California (Auto Club). The trial court concluded Appellants lacked standing because their personal claims and damages were incidental to injuries suffered by corporate plaintiffs, which they owned: S&J Builders and Restoration Services, Inc. (S&J), a California corporation, and The Home Improvement Company, Inc. (THIC), a dissolved California corporation. Further, Auto Club did not owe a duty to Appellants independent of their status as shareholders of their companies.

According to Appellants, the trial court erred because Auto Club failed to establish that Appellants lacked standing to pursue their individual claims in the operative complaint for three reasons: (1) Appellants seek to recover for injuries separate from the injury to the value of the corporate stock; (2) as closely held corporations, case law permits Appellants to retain their own personal causes of action against Auto Club; and (3) Appellants retain their rights to pursue individual damages under the maxim "for every wrong there is a remedy."

We conclude the trial court properly granted the motions for summary judgment and affirm.

---

[1] Mr. Chet Johnston died during the pendency of this action, his son and successor-in-interest, is prosecuting this matter on Mr. Johnston's behalf.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties*

S&J and THIC were contracting businesses which worked for many years with Auto Club, acting as preferred vendors for homeowners who suffered property losses while insured by Auto Club. The companies provided repair services to houses damaged in events covered by Auto Club insurance policies.

Wilson is the vice president, responsible managing officer, and a 49 percent shareholder of S&J, and his wife is a 51 percent shareholder and the president of S&J. From 1998 to 2015, Wilson, through S&J, worked with Auto Club as a preferred vendor.

Johnston was the 100 percent owner of THIC, which did business as "ESN."[2] THIC was part of a general partnership formed in January 2012, by Johnston and his business partner, Chuck Bellows. Mr. Bellows owned a company called CSRM, Inc. The general partnership was split 72 percent to THIC and 28 percent to CSRM. From 1997 to 2015, THIC also worked with Auto Club as a preferred vendor. Wilson, S&J, Johnston, and THIC contend they consistently provided superior service for Auto Club and its insured homeowners throughout their long-term business partnerships.

B. *Auto Club's Homeowners Repair Programs*

As a service to its customers, Auto Club developed a preferred home repair provider program. As will be detailed, over the years the program would evolve and go through different iterations. S&J and THIC participated in all the program versions, except the last.

---

[2] Since THIC, not ESN, is a named plaintiff in this action, we refer to Johnston's business as THIC.

In February 2013, Auto Club asked Wilson, on behalf of S&J, and Johnston, on behalf of THIC, if they were interested in participating in Auto Club's newest preferred vendor concept called Members Preferred Repair program (MPR). Auto Club's new program asked home repair business participants to bid on various geographic areas and provide discounted services to homeowners in exchange for a certain volume of referrals in those areas. Selected contractors were required to have the ability to scale operations up for the work required, provide minimum service levels, and give competitive discounts for zones in which they bid.

Wilson, on behalf of S&J, and Johnston, on behalf of THIC, responded to Auto Club's request for proposal to participate in the MPR program, and Auto Club accepted those proposals in August 2013 via an email containing the subject line "MPR RFP-Contract Award." In the contract award emails, Auto Club stated: "We have received approval on the MPR proposed network in the last few weeks. I'm happy to inform you, your company was included in our recommendation and we will be moving forward in executing a two year agreement for the below volumes and discounts for emergency and restoration/large loss referrals."

In September 2013, Auto Club sent a draft MPR program contract to Johnston,[3] but never circulated a finalized MPR program contract for all vendors' signatures. The parties to the proposed MPR program contract were Auto Club and the contracted company. Although S&J, THIC, and Auto Club never signed an MPR program contract, all parties moved forward with the new home repair program in September 2013. Based on the express representations and promises for inclusion in the MPR program, and promised referral volumes, Appellants took steps to ensure their companies

---

[3] Auto Club did not send a draft MPR program contract to Wilson.

could meet equipment, personnel, office and other business demands to execute their obligations under the agreed arrangement.

C. *Auto Club Replaces the Member Preferred Repairs Program with a Pilot Program*

In February 2014, Auto Club started looking at a new pilot program to replace the MPR, and in May 2014, stopped tracking the referral commitment with their MPR vendors.

Additionally, in May 2015, Auto Club sent letters to the MPR participating companies, including S&J and THIC, announcing the new pilot program starting June 1, 2015, that would result in the MPR vendors experiencing a decrease or no referrals in territories where the pilot program was being introduced. Wilson, S&J, Johnston, and THIC contend Auto Club started this new program with the intention of firing all or most of the MPR vendors and beginning fresh with new contractors.

D. *Auto Club Terminates its Relationship with THIC*

In September 2014, Johnston and Mr. Bellows sold the ESN partnership to Response Team 1. The parties dispute whether prior to the sale Johnston disclosed to Auto Club that he was selling THIC but would run the new operation for at least five years under his employment agreement.

In October 2014, despite THIC's positive performance, Auto Club suspended THIC. Although Johnston tried to resolve the issue, Auto Club terminated THIC from the MPR program in November 2014 and upheld their decision in February 2015 after Johnston appealed Auto Club's decision internally.

E. *Auto Club Terminates its Relationship with S&J*

In June 2015, Auto Club emailed Wilson, raising issues with nine of S&J's estimates and that Auto Club planned to discuss those with its

5

oversight committee.  S&J responded to this audit, explaining its position.  In July 2015, Auto Club informed Wilson that the oversight committee voted not to include S&J in the pilot program Auto Club debuted the previous month.

F. *Wilson, S&J, Johnston, and THIC's Litigation Against Auto Club*

In February 2018, Wilson, S&J, Johnston, and THIC filed a complaint against Auto Club.  The operative complaint is the first amended complaint (FAC) filed in July 2021.  The FAC alleges that, in ending S&J and THIC's participation in the MPR program, Auto Club breached their agreement while concealing and misrepresenting certain information.  The FAC alleges nine causes of action on behalf of all four plaintiffs, including claims for fraud, promissory estoppel, breach of fiduciary duty, and breach of contract.

In the FAC, Appellants allege Auto Club's conduct caused them to suffer economic damages and emotional distress.  Specifically, Wilson seeks damages for (a) loss of salary in excess of $200,000 for him and his wife, who assigned her salary claims to Wilson, and (b) emotional distress.  Johnston seeks (a) individual damages related to the employment agreement he executed with the company that purchased THIC's assets, Response Team 1, including the loss of $240,000 a year in salary, and (b) emotional distress damages.

Auto Club filed four summary judgment motions (one against each plaintiff) attacking the FAC.  The trial court granted the motions as to Appellants, but denied the motions as to S&J and THIC.

In granting the summary judgment motion against Wilson, the trial court found that Wilson's purported damages for lost wages and emotional distress were incidental to the injury caused by Auto Club severing its business relationship with S&J.  Additionally, the trial court found the gravamen of the wrongs alleged in all the causes of action in the FAC relate

6

to the business relationship between Auto Club and S&J, not a particular wrong Auto Club did to Wilson. Finally, the trial court determined Wilson's allegations in the FAC did not establish that Auto Club owed Wilson a special duty independent of Wilson's status as an S&J shareholder. Therefore, the trial court concluded Wilson did not have standing to bring the claims he asserted. On August 26, 2022, the trial court entered judgment dismissing Wilson.

With respect to Johnston, the trial court took the matter under submission after hearing oral argument, and subsequently granted Auto Club's summary judgment motion for the same reasons articulated in its ruling against Wilson. On September 22, 2022, the trial court entered judgment dismissing Johnston's claims.

In February 2023, Wilson and Johnston appealed the judgments of dismissal.

## III. DISCUSSION

A. *Standard of Review*

We review a summary judgment ruling de novo, applying the same standards as the trial court. (*Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999.) "In reviewing a motion for summary judgment, we accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party. In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn therefrom are accepted as true." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001.)

B. *Appellants' Claims are Derivative, Not Individual*

On appeal, Appellants argue Auto Club is not entitled to summary judgment because Appellants do not seek to recover for injuries to the corporate stock or harm suffered by all shareholders, but rather, the harm they directly and individually suffered. They contend the trial court erred in finding their claims were derivative because a shareholder "may sue as an individual where he [or she] is directly and individually injured although the corporation may also have a cause of action for the same wrong." (*Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530 (*Sutter*).)

We find that while courts have generally recognized that individual and derivative claims may coexist in the same action, here Appellants' allegations support only derivative claims. That conclusion, not any per se bar against concurrent derivative and individual claims, justified eliminating Appellants' individual claims.

1. *The Distinction Between Shareholder Individual and Derivative Actions*

"Shareholders may bring two types of actions, 'a direct action filed by the shareholder individually . . . for injury to his or her interest as a shareholder,' or a 'derivative action filed on behalf of the corporation for injury to the corporation for which it has failed or refused to sue.' [Citation.] 'The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the shareholders (direct action) or to the corporation (derivative action).' " (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 311–312, italics omitted (*Schuster*).)

An " 'action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders,

8

or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' " (*Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d. 93, 106 (*Jones*).) On the other hand, an individual action " 'is a suit to enforce a right against the corporation which the stockholder possesses as an individual.' " (*Id.* at p. 107.) "If the injury is not incidental to an injury to the corporation, an individual cause of action exists." (*Ibid.*) "Examples of direct shareholder actions include suits brought to compel the declaration of a dividend, or the payment of lawfully declared or mandatory dividends, or to enjoin a threatened ultra vires act or enforce shareholder voting rights." (*Schuster, supra,* 127 Cal.App.4th at p. 313; accord, *Sutter, supra,* 28 Cal.2d at p. 530 [" 'If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he [or she] is a party, or on a right belonging severally to him [or her], or on a fraud affecting him [or her] directly, it is an individual action.' "].)

2. *Analysis*

Appellants suggest that because they are not seeking recovery for an injury to the value of corporate stock, their claims are individual. But the court in *Nelson v. Anderson* (1999) 72 Cal.App.4th 111 (*Nelson*) specifically rejected this argument. In *Nelson*, the court concluded plaintiff did not have standing to pursue an individual claim for breach of fiduciary duty against her business partner. (*Id.* at pp. 125–126.) The court determined the plaintiff's complaint alleged misfeasance or negligence in managing the corporation's business, causing injury to the business itself. (*Ibid.*) Plaintiff argued "that because she did not expressly allege that the value of her stock was diminished as the result of an injury to the corporation, she has successfully alleged an individual injury. [The plaintiff's] economic damages were lost capital investment, lost earnings, and lost opportunities." (*Id.* at

9

p. 126.) The *Nelson* court disagreed, stating "[s]hareholders own neither the property nor the earnings of the corporation. . . . [The plaintiff] had no ownership interest in the profits of [the corporation] and cannot have been deprived of them." (*Ibid.*, citations omitted.) Accordingly, we disagree that a shareholder automatically has an individual cause of action if they are not seeking injury to the value of corporate stock.

Instead, to determine whether Appellants have standing to assert their individual claims, we rely on *Jones*. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455 ["The decisions of [the California Supreme Court] are binding upon and must be followed by all the state courts of California."].) We therefore examine whether Appellants' alleged injuries are incidental to the injuries S&J and THIC suffered. (See *Jones, supra,* 1 Cal.3d. at pp. 106–108.)

First, the FAC's core allegation is Auto Club unreasonably and without justification terminated S&J and THIC from the MPR program and did not honor the promises made with respect to that program. The FAC details, among other wrongs, that Auto Club did not provide the promised specific percentage referral volume, failed to keep the program estimates to the appropriate pricing, failed to provide a written contract, and prematurely terminated their business partnership with S&J and THIC. Accordingly, the claims alleged in the FAC are Auto Club's breach of the MPR program contract and wrongful termination of its business relationship with S&J and THIC, not a particular wrong done to Appellants.

There is substantial evidence in the record to support this conclusion. First, S&J and THIC, not Appellants, contracted with Auto Club to participate in the MPR program. In the contract award emails, Auto Club informed Appellants that their companies were included in the MPR

10

program. Also, the parties to the proposed MPR program contract are Auto Club and S&J or THIC, i.e., the contracted company, not the individual shareholders of that company.

The FAC also alleges it is because Auto Club breached the MPR program contract and terminated its relationship with S&J and THIC that the corporations lost a significant amount of business resulting in Appellants suffering significant income loss and emotional distress. In discovery, Wilson stated at the time Auto Club terminated its relationship with S&J, the work Auto Club assigned to S&J comprised an estimated 90 percent of S&J's revenue. Thus, the emotional distress and lost wage damages Appellants pursue directly result from Auto Club breaching the contract with their companies, not a specific injury to themselves that exist outside of the injury to the corporation.

Further, despite Appellants' claim they are not seeking to recover corporate assets, their lost income is a corporate asset so it may only be pursued in a derivative action. (See *Nelson, supra,* 72 Cal.App.4th at p. 126; *Miller v. McColgan* (1941) 17 Cal.2d 432, 436.)

Whether a party has standing in a given legal dispute is a matter we review de novo. (*Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 150–151 (Schrage).) "We review any factual findings underlying a trial court's ruling on standing for substantial evidence." (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1174.) Here, substantial evidence supports the trial court's finding that Appellants lack standing to pursue their individual causes of action against Auto Club. Appellants' purported damages of lost salary and emotional distress are incidental to the injuries S&J and THIC suffered.

11

C. *Appellants Do Not Retain Individual Causes of Action*

Appellants' second argument on appeal is that case law provides that shareholders of closely held corporations retain their own personal causes of action. They rely on *Tan Jay Internat., Ltd. v. Canadian Indemnity Co.* (1988) 198 Cal.App.3d 695 (*Tan Jay*) for the proposition that a shareholder in a closely held corporation can sue for injuries to himself or herself, such as emotional distress damages. *Tan Jay* is factually distinguishable from this case.

In *Tan Jay*, a woman's sportswear corporation and its majority shareholder sued for damages, breach of contract, emotional distress, and declaratory relief against an insurer, alleging bad faith refusal to defend and indemnify them in a third-party action. (*Tan Jay*, *supra*, 198 Cal.App.3d at pp. 699–700.) The court concluded the majority shareholder had standing to sue for his own emotional distress damages because he was a named insured on the coverage policy at issue in the case. (*Id.* at p. 707 ["where 'shareholders of a closely held corporation are joint insureds with it, the insurers' implied covenant of good faith and fair dealing runs to the shareholders as well as to the corporation and the shareholders may pursue a cause of action for its breach' ".) Unlike in *Tan Jay* Appellants in this matter do not have an independent contract (like an insurance policy) with Auto Club on which to base their individual claims. We therefore reject this argument.

D. *Remedy for Every Wrong*

Appellants' final argument on appeal is that they retain their rights to pursue individual damages under the maxim for every wrong there is a remedy. Under these circumstances, we disagree.

12

Civil Code section 3523 provides: "For every wrong there is a remedy." "But this statute does not create substantive rights or an unbounded right to damages. [Citation.] Instead, '[this] wholesome maxim of jurisprudence . . . can obviously have no application to any but legal wrongs or those wrongs for which the law authorizes or sanctions redress.' [Citations.] 'A tort . . . involves a violation of a legal duty, imposed by statute, contract, or otherwise, owed by the defendant to the person injured. Without such a duty, any injury is 'damnum absque injuria'—injury without wrong.' [Citations.] The proposition that courts should strain to provide remedies for every 'wrong' in the moral sense flies directly in the face of this longstanding authority that only legal wrongs must be redressed." (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1526–1527, italics omitted (*MEGA Life*); accord, *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 864–865.) "Instead, whether to recognize a new 'legal wrong' or 'tort' is often governed by policy factors. [Citation.] In making these determinations, both the courts and the Legislature must weigh concepts of 'public policy,' as well as problems inherent in measuring loss, and 'floodgates' concerns, in addition to the traditional element of foreseeability." (*MEGA Life,* at p. 1527.)

Consequently, Civil Code section 3523 does not allow Appellants to recover for their lost wages and emotional distress damages unless existing law allows the recovery, or public policy supports recognition of such a right. (*MEGA Life, supra*, 172 Cal. App. 4th at p. 1528.) As discussed, we find no legal support for Appellants' causes of action, so we turn to whether public policy supports Appellants' individual damage claims.

*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238 identified three primary policy justifications for requiring derivative actions:

13

(1) preventing a multiplicity of lawsuits and ensuring equal treatment for all aggrieved shareholders; (2) protecting the rights of creditors; and (3) encouraging resolution within the corporation and promoting managerial freedom.[4] (*Jara*, at pp. 1258–1259.) Our Supreme Court in *Jones*, however, did not rely upon such policy considerations in distinguishing individual and derivative actions. (*Jones, supra,* 1 Cal.3d at pp. 106–108.) While *Jara*'s policy justifications are typically attenuated in closely held companies like S&J and THIC, that fact does not authorize us to disregard the *Jones* framework. (See *Schrage, supra,* 69 Cal.App.5th at p. 158.) To allow Appellants to maintain their individual causes of action based on such policy considerations "would essentially eliminate the derivative action rule in the context of close corporations and other closely held entities. California law does not support that result." (*Ibid.*) We therefore reject Appellants' final argument.

---

[4]   Another policy justification for derivative actions is to prevent "the risk of double recovery—once to the shareholder and once to the corporation." (*Vinci v. Waste Management, Inc.* (1995) 36 Cal.App.4th 1811, 1815.)

## IV. DISPOSITION

The trial court's August 26, 2022 and September 22, 2022 judgments of dismissal are affirmed.  Auto Club to recover their costs on appeal.

RUBIN, J.

WE CONCUR:

KELETY, Acting P. J.

CASTILLO, J.